556 So.2d 202 (1990)
Penny Tippen MYERS, Plaintiff-Appellant,
v.
STONE CONTAINER, INC., Defendant-Appellee.
No. 21127-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1990.
Rehearing Denied February 22, 1990.
Writ Denied April 27, 1990.
*203 Dawkins, Coyle & Carter by Michael S. Coyle, Ruston, for plaintiff-appellant.
Crawford & Anzelmo by Donald J. Anzelmo, Monroe, for defendant-appellee.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
In this worker's compensation action the claimant appeals a judgment rejecting her demands for disability benefits that arose out of a February 16, 1987, accident. The sole issue is whether her temporary total disability extended beyond April 13, 1987.
The preponderance of the evidence, lay and medical, shows that claimant's disability extended to September 21, 1988. We reverse to award claimant benefits for that period.

FACTS
Claimant Ms. Myers, a 31-year old housewife, had worked in her employer's paper mill for about six months engaged in "heavy labor" as an operator of a bag making machine. On February 16, 1987, when forcibly attempting to release paper jamming her machine she experienced sharp pain in her groin area that caused her to collapse and become nauseated. She was carried by stretcher to the nurse's station. From there she was taken to the local hospital where she saw the emergency room physician (Dr. Foust).
Ms. Myers thereafter, and often in consultation with her employer, saw three other doctors (Drs. Belchic, Hand, and Gavioli) on two occasions each between February 20 and April 6, 1987, consistently complaining of groin, low back and neck pain. Dr. Foust diagnosed her injury as a "groin strain." Dr. Hand's diagnosis was "lumbosacral strain and groin pull, right hip." Dr. Belchic diagnosed it as a "lumbar strain," noting that she had no "objective findings" consistent with her complaints, but suggested that she not resume working, and return for a repeat examination on March 3. Dr. Gavioli saw Ms. Myers on March 10 and April 6, 1987. His diagnosis was "cervical and lumbosacral strain and probable strain of some abdominal musculature." He thought she might be able to return to work "within a couple of weeks."
Each doctor prescribed anti-inflammatory and pain medication, among other things. Each doctor released her to return to work on or before April 13. Ms. Myers' husband moved from Chatham, Louisiana, to Malvern, Arkansas, in March 1987, where he found employment. She moved there in April. On May 6, 1987, Ms. Myers saw a Shreveport orthopedist, Dr. Dean, with the same complaints. X-rays indicated to him that Ms. Myers had a degenerative disc and narrowing of the L5-S1 interspace. One or more of the other doctors had noted this but deemed it insignificant. Dr. Dean suggested she undergo further diagnostic tests and that she contact a doctor near her home to avoid the drive to Shreveport.
Shortly after seeing Dr. Dean, Ms. Myers instituted her action, alleging that her employer refused to pay for the diagnostic *204 tests recommended by Dr. Dean. The record does not show that such a demand was made on the employer or that Dr. Dean's charges or suggestion was made known to the employer.
At trial on August 11, 1988, the trial court heard testimony from Ms. Myers, her husband, and her two sisters. Depositions by Dr. Dean and by Dr. Belchic were also introduced along with medical records of the hospital and reports by Drs. Foust, Hand, and Gavioli that had been sent to the employer.
Ms. Myers and her employer stipulated that she sustained a work-related injury on February 16, 1987; that all medical expenses submitted to the employer had been paid; and that she was paid weekly benefits of $237.79 through April 13. Ms. Myers, her husband and two sisters testified about her verbal complaints and physical manifestations of pain and discomfort while in their respective company.
At the close of the trial, the court ordered Dr. Dean to cause the recommended diagnostic tests to be conducted on Ms. Myers at the employer's expense and the results reported to the court. This was done. Dr. Dean's second deposition was thereafter taken and the case submitted for decision in December 1988.
Concluding that she failed to prove she was disabled beyond April 13, 1987, the trial court stated that "the medical evidence and [Ms.] Myers' conduct ... was inconsistent with her ... complaints.".

DR. DEAN'S DEPOSITION
Dr. Dean had recommended a "CT scan," sometimes referred to as a "CAT scan," and an MRI study be done on Ms. Myers. The CAT scan was done August 24, 1988. The MRI study was done September 12. Dr. Dean summarized what these studies showed:
... a bulging annulus (disc) at L4-L5 and L5-S1 with narrowing of the fecal sac probably representing spinal stenosis... crowding of the spinal cord ...
[I]t shows on the MRI basically the same thing it did on the CAT scan. It shows these discs to be degenerating and bulging posteriorly ...
[A]ccording to her history, I would say... that [her] injury [of February 16, 1987] aggravated this [degenerative] condition and it has caused her to be more symptomatic and has caused her some other problems.
Q: [S]hould [she] have avoided her former employment up until these tests were taken to see what her problem was?
A: Yes. According to her symptoms and her difficulties and with what this [test] shows, I would say that she should not be doing the repeated bending and heavy lifting.
On cross-examination, Dr. Dean stated that Ms. Myers, as of September 21, 1988, was capable of some "restricted employment," or "work that would not involve repeated bending or heaving lifting ... Occasionally, she can do some lifting, 10 or 15 [pounds]."
At the close of the hearing the trial court found that Ms. Myers "was suffering from problems which she did not have prior to the accident." After the diagnostic tests were run, the court said that Dr. Dean "could not conclude with reasonable medical probability that her complaints related to the injury at her employer's [paper mill]."

THE BURDEN OF PROOF
We must conclude the trial court misconstrued Dr. Dean's testimony and overlooked the legal presumption that is applicable to Ms. Myers' circumstance. Her disability is presumed to have resulted from the February 16, 1987, accident, if, before the accident, she was in good health [she was], but commencing with the accident, the symptoms of the disabling condition appear and continuously manifest themselves afterwards [they did], providing that the medical testimony establishes a reasonable possibility of causal connection between the accident and the disabling condition [it does]. Hammond v. Fidelity & Casualty Co. of N.Y., 419 So.2d 829 (La. 1982); Green v. Jackson Rapid Delivery *205 Service, Inc., 506 So.2d 1345 (La.App. 2d Cir.1987).
In essence, the trial court's finding of "no relation" between Ms. Myers' complaints of pain after April 13 and the accident of February 16 is a finding of no causal connection. Ms. Myers was in good health before. The trial court's initial finding establishes this. She immediately and consistently thereafter complained of disabling pain in her groin, low back and neck. All witnesses agree on this. There were objective symptoms that she had a degenerative condition [bulging discs at the L4-L5 and L5-S1 interspaces], and "... that [her] injury [of February 16, 1987] aggravated this [degenerative] condition and ... caused her to be more symptomatic and ... caused her some other problems."
These circumstances then imposed upon the employer the burden of presenting evidence that something else that occurred to Ms. Myers between February 16, 1987, and September 21, 1988, caused her disability. The employer's suggestion that her automobile trips to and from Arkansas and Louisiana caused her disability does not meet the shifted burden of proof. Where an employee in Ms. Myers' circumstances produces medical evidence that shows a "reasonable possibility of causal connection between the accident and the disabling condition" the employee is deemed to have met the burden of proving her case by a preponderance of the evidence. See discussion and cases cited in 13 Malone and Johnson Louisiana Civil Law Treatise, "Worker's Compensation," §§ 252-257; 259 (2d Ed. 1980 & Supp.1989).

SUPPLEMENTAL EARNINGS BENEFITS
We have held that Ms. Myers is entitled to temporary, total disability benefits through September 21, 1988. She also contends that she is entitled to supplemental earnings benefits (SEB).
The purpose of SEB is to compensate the injured employee for loss of wage earning capacity. A plaintiff has the burden of proving entitlement to SEB by a preponderance of the evidence (Walton v. Normandy Village Homes Ass'n., Inc., 475 So.2d 320 (La.1985)) that she is unable to earn 90 percent or more of the wages she received at the time of the injury. LRS 23:1221(3)(a). Any work-related injury resulting to the employee's inability to earn wages equal to 90 percent or more of her pre-injury wages entitles her to compensation for a percentage of her lost earning capacity. Killen v. Continental Ins. Co., 514 So.2d 711 (La.App. 2d Cir.1987).
Under LRS 1221(3)(a), the employer may preclude SEB by establishing that the employee is physically able to perform work that was either "offered or tendered by the employer or any other employer" or "proven available to the employee in the employee's or employer's community or reasonable geographic region." An employee able to earn, but not earning, 90 percent or more of her former wages is not entitled to SEB. 13 Malone and Johnson, Louisiana Civil Law Treatise, "Worker's Compensation," § 275, p. 96.
The record shows that Ms. Myers was disabled through September 21, 1988, according to Dr. Dean. He opined that Ms. Myers is unable to return to her previous employment and should not engage in repeated bending or heavy lifting. Ms. Myers testified that she was incapable of performing any work, explaining that she was only able to do some housework in pain, following by a rest period. Her testimony proves, prima facie, that she is unable to work as LRS 23:1221(3)(a) contemplates.
Under the 1986 amendments, benefits are to be calculated at 66 2/3 percent of the difference between a plaintiff's average monthly wage at the time of the injury and the average monthly wages actually earned thereafter. To meet the threshhold burden, an employee must establish her average monthly pre-injury wages. Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La. 1989). While we may calculate her monthly wage from the stipulated weekly benefit rate, we cannot, on this record, determine her average monthly wage.
*206 Neither can we determine what work is available to her in her, or her employer's, community or reasonable geographic region. LRS 23:1221(3)(c)(i). We cannot speculate whether Ms. Myers actually earned any wages after trial or the duration, if any, she is entitled to SEB. Any definitive ruling here would be premature.
Until Dr. Dean's test results were reported, there was little evidence that Ms. Myers had a disability.
We deem it necessary and appropriate to remand this case to the trial court to determine the SEB benefit. Each litigant may present evidence as the statute contemplates. The trial on remand shall be conducted in the light of this opinion and Daigle v. Sherwin-Williams Co., cited supra.

STATUTORY PENALTIES
Myers further contends that her employer was not justified in terminating benefits and should be cast for penalty interest and attorney's fees under LRS 23:1201.2.
Prior to 1983, LRS 22:658 generally applied to worker's compensation cases and provided for the payment of penalty interest of 12 percent and reasonable attorney's fees for failure of the insurer to pay a worker's compensation claim within 60 days after proof of loss and demand for payment. LRS 23:1201.2, as amended in 1983, rendered LRS 22:658 inapplicable to w.c. claims. By Act 732 of 1988 amending LRS 23:1201.2, only LRS 22:658(C) is now applicable to the Louisiana Worker's Compensation Law. Penalty interest is denied. LRS 23:1201.2. See Lescuer v. Liberty Mutual Ins. Co., 552 So.2d 521 (La.App. 2d Cir.1989).
Ms. Myers further argues that her employer did not have sufficient medical information to terminate w.c. benefits on April 13, 1987, and should be cast for penalty attorney fees.
Dr. Dean's initial medical report was not sent to the employer before suit was filed. The employer had medical reports from several doctors, all of whom stated that Ms. Myers was able to return to her former employment on or before April 13. Only after the petition was served did the employer learn about Dr. Dean and his recommendations. The employer then agreed to pay for such tests.
Ms. Myers had the burden of proving that Stone Container acted arbitrarily and capriciously in refusing her demand for benefits beyond April 13, 1987. The employer is required to make every reasonable effort to ascertain the employee's exact medical and physical condition before benefits are denied. Duplechain v. Gulf States Utility Co., 468 So.2d 1386 (La.App. 3d Cir.1985).
Because the statute is penal, the statute must be strictly construed. Hanks v. CRC Holston, Inc., 430 So.2d 1340 (La. App. 3d Cir.1983), writ denied; Berkel v. Aetna Casualty & Surety Co., 462 So.2d 1287 (La.App. 5th Cir.1985). An award of attorney's fees is precluded when the employer asserts a good faith defense, based upon competent medical evidence. Jackson v. Georgia Casualty & Surety Co., 513 So.2d 530 (La.App. 2d Cir.1987), writ denied. This is especially true where medical evidence indicates that a claimant is able to return to work, even though subsequent events prove this conclusion to be incorrect. Coleman v. Crown Zellerbach Corp., 421 So.2d 300 (La.App. 1st Cir.1982).
Ms. Myers acknowledges that Stone Container had received Dr. Belchic's March 3 report releasing her to return to work. She argues, however, that Dr. Gavioli, who saw her on April 6, did not specifically release her to return to work.
Ms. Myers admitted receiving Stone Container's notice to either return to work on or before that date or request additional leave. She did not respond and was terminated on April 15, 1987. Ms. Myers testified that because her employment had been terminated, she did not inform Stone Container of her desire or intention to consult with Dr. Dean, and that she was aware that any additional treatment would be at her own expense. Ms. Myers said she consulted with Dr. Dean on May 6, 1987, upon the recommendation of a Shreveport attorney.
*207 Only after trial and after Dr. Dean had conducted the the diagnostic studies was there any evidence that Ms. Myers' disability continued after April 13, 1987.
Under these circumstances, we cannot find that Stone Container was arbitrary and capricious in not reinstating Ms. Myers' benefits. Attorney fees are denied.

DECREE
We reverse the judgment insofar as it denied Myers temporary, total disability benefits. Judgment is hereby rendered against Stone Container and in favor of Ms. Myers for weekly workers compensation benefits of $237.79 from April 14, 1987, through September 21, 1988, for temporary total disability, with legal interest from its respective due date until paid, as well as any unpaid medical and travel expenses.
We remand to the trial court for further proceedings during which each party may present evidence on the SEB issue.
All costs, here and below, are assessed against the employer.
REVERSED, RENDERED IN PART, and REMANDED.

ON APPLICATION FOR REHEARING
Before HALL, MARVIN, FRED W. JONES, Jr., SEXTON and HIGHTOWER, JJ.
Rehearing denied.