635 So.2d 522 (1994)
Stacey THIBODEAUX, Plaintiff-Appellant,
v.
The CAJUN RESTAURANT, Defendant-Appellee.
No. 93-1090.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1994.
*523 Kraig Thomas Strenge, Lafayette, for Stacey Thibodeaux.
Mark Louis Riley, Lafayette, for Cajun Restaurant.
Before GUIDRY, C.J., LABORDE, J., and CULPEPPER,[*] J. Pro Tem.
GUIDRY, Chief Judge.
In this worker's compensation action, plaintiff, Stacey Thibodeaux, appeals a judgment of an Office of Worker's Compensation hearing officer dismissing his claim. We affirm.

FACTS
The following facts were stipulated to at trial. On December 31, 1990, while in the course and scope of his employment as a bus boy at Mulate's Restaurant, plaintiff, Stacey Thibodeaux, slipped and fell while exiting a walk-in freezer with a load of frozen ducks. The accident was witnessed by several employees. At the time of the accident, Thibodeaux's average weekly wage was $93.49 per week. Thibodeaux was paid compensation at the rate of $75.00 per week beginning February 11, 1991 and ending August 16, 1991. Plaintiff's request to have Dr. Louis Blanda become his treating physician was denied.
The record reflects that, following his accident, Thibodeaux denied being injured. He never complained of any back pain to his fellow employees and none of his fellow employees noticed any change in Thibodeaux's ability to perform his duties as a bus boy. After the accident, Thibodeaux continued to work until he was suspended for reporting to work intoxicated on February 10, 1991, after which time he never returned to work. Plaintiff first consulted a doctor for his alleged back pain on February 14, 1991 when he went to see his family physician, Dr. Marelle Yongue. After his second visit, Dr. Yongue suggested Thibodeaux see an orthopaedic surgeon. She recommended Dr. John Schutte.
When Mrs. Thibodeaux, plaintiff's mother, called Self Insurers Service Bureau, Inc., Mulate's worker's compensation carrier, for authority to take her son to see Dr. Schutte, Lori Francis, plaintiff's case manager, requested Thibodeaux see Dr. Clifton Shepherd, Jr. instead. Mrs. Thibodeaux agreed and Dr. Shepherd became plaintiff's treating physician. Plaintiff saw Dr. Shepherd nine times, compared to one visit each to Drs. Schutte and Plauche, two visits to Dr. Yongue and three visits to Dr. Blanda.
Dr. Shepherd first examined Thibodeaux on March 26, 1991. Dr. Shepherd testified that, although plaintiff exhibited apparent *524 tenderness in the lumbosacral region, he could detect no muscle spasms, muscle weakness or sensory loss in Thibodeaux's lower back. Plaintiff's straight leg raise test, both sitting and supine, were negative bilaterally. Dr. Shepherd further stated that x-rays of plaintiff's back showed a slight abnormality at L1-2, which he considered to be degenerative in nature. Based on Thibodeaux's history, examination and x-rays, Dr. Shepherd diagnosed plaintiff's problem as a strained back and began a course of conservative treatment.
Because of Thibodeaux's continued complaints, Dr. Shepherd ordered a number of diagnostic tests: MRI, CAT scan, myelogram and a post myelogram CAT scan. Dr. Shepherd noted that upon examination the patient had inconsistently reported reactions to a number of physical tests. The diagnostic tests revealed a slight lateral bulge at L1-2, and a spur, which was causing some impression of the thecal sac, a finding consistent with an old disc space infection. Dr. Shepherd did not find this condition to be clinically significant but, to be on the safe side, ordered a bone scan. The bone scan showed some uptake in the region of L1-2, a result consistent with an old disc space infection.
In the interim, Thibodeaux sought and received approval to consult Dr. John Schutte, his choice of orthopaedic surgeon. Dr. Schutte examined plaintiff on June 17, 1991 and forwarded his report to Dr. Shepherd. That report basically agreed with Dr. Shepherd's findings. After reviewing Thibodeaux's bone scan, Dr. Schutte diagnosed plaintiff as having mild degenerative lumbar disc disease. He opined that Thibodeaux could return "to at least medium work", i.e., "... no lifting greater than fifty pounds".
On August 16, 1991, Dr. Shepherd, after receiving Dr. Schutte's report, wrote Ms. Francis at Self Insurers Service Bureau informing her that he was releasing Thibodeaux to return to work.
We find it significant that all the physicians consulted by Thibodeaux specifically inquired about any prior injury to his back or complaints involving the back. Thibodeaux and his mother, who accompanied him to all doctors' appointments save two, both denied any prior back problem. Yet, during the last phases of discovery it was learned that when plaintiff was eight years old he was involved in an accident on a three wheel motor bike in which he was thrown over the handle bars. According to the records of Dr. A.N. McCallum, who treated him, Thibodeaux "... sustained a concussion and abrasion to the head, [and] also complained of his back". While x-rays taken of his back at the time failed to "demonstrate a definite fracture", Dr. McCallum, in deposition, readily admitted that an accident of the nature sustained by plaintiff could do damage to bony structures that would not appear on x-rays at the time. This, he opined, would include the beginning of a degenerative process.
After being released by Dr. Shepherd, Thibodeaux did not try to return to work. He returned to Dr. Shepherd in September 1991 with complaints of continued back pain. Dr. Shepherd told Thibodeaux he could find no basis for his complaints and suggested he continue on anti-inflammatory medication.
Upon receiving this advice, Thibodeaux sought authorization to seek treatment from Dr. Louis Blanda. Inasmuch as he had already been authorized to see Dr. Schutte, his choice of orthopaedic surgeon, authorization to see Dr. Blanda was denied. Nonetheless, Thibodeaux, at his own expense, consulted Dr. Blanda in October 1991.
Dr. Blanda examined plaintiff and reviewed the same roentgenographic material as had Drs. Schutte and Shepherd. He, however, reached the conclusion that Thibodeaux had herniated discs at L1-2 and L5-S1. Dr. Blanda also found muscle spasm in plaintiff's back, an objective finding not found by either Dr. Schutte or Dr. Shepherd. Dr. Blanda recommended a neurological evaluation by Dr. James Domingue.
At this point, Thibodeaux was referred to Dr. Herbert Plauche, an orthopaedic surgeon in Baton Rouge, for an independent medical examination (I.M.E.). Dr. Plauche basically agreed with Dr. Blanda and also recommended a neurological evaluation.
Based upon the recommendation of Drs. Blanda and Plauche, Self Insurers Service Bureau authorized a neurological evaluation *525 by Dr. James Domingue, who in May 1992 reported an examination within normal limits. Dr. Domingue found no evidence of neural compromise and neurologically, did not recommend any specific intervention.
Thibodeaux's last visit to any doctor was on July 16, 1992, to Dr. Blanda, whose progress note of that visit reflects a diagnosis of "some radiculitis [inflammation of spinal nerve roots] but no overt radiculopathy [disease of spinal nerve roots]".

THE DISABILITY ISSUE
On appeal, plaintiff argues that the hearing officer erred in finding that he failed to prove that he was disabled beyond August 1991.
The standard of review which we must apply in examining the actions of a trier of fact was scrupulously set out by our Supreme Court in Rosell v. ESCO, 549 So.2d 840 (La. 1989), and recently reiterated in Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La. 1993), where the court stated:
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder's determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
... [T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one....
Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. Esco, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. Nonetheless, this Court has emphasized that "the reviewing court must always keep in mind that `if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" Housley v. Cerise, 579 So.2d 973 (La.1991) (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
We have examined the record in light of these principles and find no clear error in the hearing officer's findings.
Plaintiff argues that inasmuch as he was only released to medium work in August 1991, that his disability continued beyond that point. We disagree. By plaintiff's own admission, his duties at defendant's establishment did not require lifting more than fifty pounds, the limit recommended by Dr. Schutte and agreed to by Dr. Shepherd. Yet, plaintiff made no effort to try to return to work. Clearly, according to his treating physicians, plaintiff was not disabled from performing his prior work when discharged in August of 1991.
Although subsequently Dr. Blanda and Dr. Plauche opined that Thibodeaux had herniated discs at L1-2 and L5-S1, Dr. Domingue's later neurological examination, conducted at the request of Dr. Blanda, was within normal limits and revealed no neural compromise. Under these circumstances, we do not consider the hearing officer clearly erred in finding that this later medical evidence did not reasonably controvert the earlier opinion of Drs. Shepherd and Schutte that plaintiff was not disabled beyond August of 1991.

*526 PLAINTIFF'S CHOICE OF PHYSICIAN

Appellant next urges that the hearing officer erred in refusing to order defendant to pay for treatment by Dr. Blanda.
La.R.S. 23:1121 relied upon by appellant, states in pertinent part, as follows:
B. The employee shall have the right to select one treating physician in any field or specialty. After his initial choice the employee shall obtain prior consent from the employer or his worker's compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.
C. If the employer or insurer has not consented to the employee's request to change physicians when such consent is required by this Section, and it is determined by a court having jurisdiction that the withholding of such consent was arbitrary and capricious, or without probable cause, the employer or the insurer shall be liable to the employee for reasonable attorney's fees related to this dispute and for any medical expense so incurred by him for an aggravation of the employee's condition resulting from the withholding of such physician's services. (Emphasis ours)
Thibodeaux sought and received authorization to consult Dr. Schutte, an orthopaedic surgeon of his choice. He later sought authority to change physician and consult with Dr. Blanda, a second orthopaedic surgeon. We find no error in the hearing officer's conclusion that the employer's denial of consent to consult Dr. Blanda was with probable cause and was not arbitrary and capricious.

PENALTIES AND ATTORNEY'S FEES
We finally consider the issue of penalties and attorney's fees. In Bradley v. Justiss Oil Company, Inc., 618 So.2d 646 (La. App. 2d Cir.1993), our brethren of the Second Circuit explained:
The determination of whether an employer should be cast with penalties and attorney fees is essentially a question of fact and the trial court's finding shall not be disturbed on appeal absent manifest error. McKenzie v. City of Bossier City, 585 So.2d 1229 (La.App. 2d Cir.1991); Jim Walter Homes v. Lewis, 544 So.2d 485 (La.App. 2d Cir.1989).
Whether reduction or termination of workers' compensation benefits is without probable cause so as to render the employer liable for attorney fees and penalties depends primarily on facts known by the employer at the time of its action. When a reduction or termination is based on legitimate disputes as to extent or cause of claimant's disability, penalties and attorney fees will not be awarded. Lynn v. Berg Mechanical, Inc., 582 So.2d 902 (La.App. 2d Cir.1991); Ross v. St. Paul Fire & Marine Ins. Co. [556 So.2d 891 (La.App. 2d Cir.1990)], supra; Jim Walter Homes v. Lewis, supra. A workers' compensation claim is "reasonably controverted," precluding imposition of penalties and attorney fees, if the employer had sufficient factual and medical information upon which to base a decision to reduce or terminate benefits. McKenzie v. City of Bossier City, supra; Myers v. Stone Container, Inc., 556 So.2d 202 (La.App. 2d Cir. 1990), writ denied, 560 So.2d 30 (La.1990).
See also Guillory v. City of Lake Charles, 614 So.2d 165 (La.App. 3rd Cir.1993), writ denied, 616 So.2d 700 (La.1993).
In this case, the employer had reports from both its choice and claimant's choice of orthopaedic surgeons stating that he was released to return to work when it terminated claimant's benefits. Clearly, this was sufficient medical information upon which to rely in making a decision to terminate plaintiff's benefits.
Accordingly, for the reasons stated above, the judgment of the hearing officer is affirmed. All costs of this appeal are taxed against appellant, Stacey Thibodeaux.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court.