651 So.2d 444 (1995)
Livonia LEMOINE, Plaintiff-Appellee,
v.
HESSMER NURSING HOME, Defendant-Appellant.
No. 94-836.
Court of Appeal of Louisiana, Third Circuit.
March 1, 1995.
*446 Dan B. McKay Jr., Bunkie, for Livonia Lemoine.
Charles Munson Lanier Jr., New Orleans, for Hessmer Nursing Home.
Before WOODARD, DECUIR and PETERS, JJ.
PETERS, Judge.
This is a workers' compensation case in which the plaintiff, Livonia Ducote Lemoine, suffered an accident while in the course and scope of her employment with Harris Management Company, d/b/a Hessmer Nursing Home. The accident occurred on May 24, 1990, and the plaintiff was paid weekly benefits and medical expenses through March 7, 1992. She began this action to recover benefits on July 21, 1992. After trial, the hearing officer awarded supplemental earnings benefits from March 7, 1992, to November 18, 1993, and temporary total disability benefits from November 18, 1993, until her medical condition changes in the future. Additionally, the hearing officer ordered that certain unpaid medical bills be paid by the employer, and awarded penalties and attorney fees to Ms. Lemoine. The employer appeals this judgment.

DISCUSSION
For approximately two years prior to the accident Livonia Ducote Lemoine had been employed as a nurse's assistant by Hessmer Nursing Home at its Avoyelles Parish location. Her duties in that position included bathing, dressing, and feeding patients as well as transporting them from place to place within the nursing home. The nature of her duties required that she frequently lift patients to place them in their wheelchairs or back into their beds. On May 24, 1990, Ms. Lemoine claims she felt a strain in her back, legs, and stomach while lifting an elderly woman from her bed and placing her in a wheelchair. She reported the accident and then went home.

Medical Evidence
The accident occurred on a Thursday, and on Saturday, the plaintiff sought medical attention at the emergency room of the Humana Hospital in Marksville, Louisiana. According to Ms. Lemoine, the physician on duty released her and told her to see her family doctor. On the following Monday, the nursing home supervisor called her at home to inquire as to her status. After informing the supervisor of her condition, the plaintiff was told to come to the nursing home to complete an accident report. Additionally, she was referred to Dr. Edmund Kalifey, the nursing home physician. This initial treatment by Dr. Kalifey was the beginning of an extensive medical history which requires evaluation in order to dispose of the issues raised herein.
Dr. Kalifey is a Marksville, Louisiana, general practitioner. He treated Ms. Lemoine for a lumbar strain on five occasions between May 29, 1990, and August 22, 1990. Due to her continued complaints of pain, Dr. Kalifey referred Ms. Lemoine to Dr. Ray J. Beurlot, *447 an orthopaedic surgeon in Alexandria, Louisiana.
Dr. Beurlot then treated Ms. Lemoine from June 26, 1990, through December 12, 1990. His initial diagnosis was also that of a lumbar strain. A CT scan in July of 1990, revealed no abnormalities suggestive of a herniated disc. An electromyography (EMG) and nerve conduction velocity studies performed on September 5, 1990, at the request of Dr. Beurlot also produced normal results. However, an MRI performed on October 3, 1990, did reveal bulging of the L4-L5 disc. In order to help reduce her pain, Dr. Beurlot recommended that Ms. Lemoine wear a lumbosacral corset. In addition, he referred her to Dr. M. Lawrence Drerup, a neurosurgeon in Alexandria, Louisiana, for further evaluation.
Dr. Drerup consulted the patient from October 22, 1990, until April 4, 1991. His initial diagnosis was a possible disc herniation at the L4-L5 left disc and a possible herniated nucleus pulposus at the L3-L4 level on the left and central area. He began a conservative treatment program including pain medication, light activity, and bed rest. Because Ms. Lemoine's condition remained unchanged, Dr. Drerup ultimately recommended surgery, and on November 20, 1990, the plaintiff underwent lumbar microdiscectomy surgery at the L3-L4 level on the left side. However, according to Ms. Lemoine, the surgery was not successful. She continued to suffer pain in her lower back and began to demonstrate a greatly reduced range of motion. In January of 1991, Dr. Drerup prescribed a conservative physical therapy routine, but four months later Ms. Lemoine's pain persisted. Despite the complaints of pain, a postoperative MRI revealed no evidence of recurrent or residual disc herniation. When Dr. Drerup last saw the plaintiff in April of 1991, he still considered her to be unable to return to work. To treat her continued complaints, the doctor then recommended that she enroll in a special program known as the Comprehensive Spine Program.
The Comprehensive Spine Program is an intense program which includes further medical evaluation and treatment, psychological evaluation and treatment, Revaluation and recommendations as to such things as proper diet, physical therapy three days per week for three to six hours per day, and ultimately a functional capacity assessment of the individual. Ms. Lemoine began the program on May 5, 1991, and attended through July 10, 1991. In late June, the administrators of the program concluded that Ms. Lemoine had improved physically and emotionally, and scheduled the functional capacity evaluation for July 9, 1991. At approximately the same time, the plaintiff began to attend the sessions only sporadically and did not attend the assessment appointment. Despite the encouraging signs in late June, the compensation carrier was informed by the program nurse on July 10, 1991, that the plaintiff "was less than compliant with the program." Ms. Lemoine removed herself from the program without completing the final assessment.
Shortly after quitting the program, Ms. Lemoine began seeing Dr. Frederick Lionel Mayer, an Opelousas, Louisiana, orthopaedic surgeon, who first examined her on July 22, 1991, and last examined her on September 22, 1993. His examination on July 22, 1991, revealed no objective neurological findings despite plaintiff's complaints of a stocking numbness throughout the left lower extremity which corresponded to no specific nerve root distribution. Dr. Mayer testified in his deposition that after his initial examination,
[m]y opinion was that this patient had undergone a micro-lumbar diskectomy on November the 20th, 1990. She was still subjectively symptomatic. She has had a postoperative MRI, which demonstrated only postoperative changes with no appreciable abnormalities. I did not have the actual MRI X-rays for review. The patient did not present any clinical evidence of recurrent lumbar disc herniation or a peripheral neuropathy. I certainly do not feel that any further surgery is indicated at this time. I do not feel that the patient is capable of returning to work as a nursing assistant in the same capacity as prior to her injury. I would recommend that she be directed to some other less strenuous type of work. And in light of this, I *448 would recommend that an FCE be done at this time. (emphasis added).
Thus, Dr. Mayer was of the opinion that the plaintiff could return to light or sedentary work as of the date of his first examination in July of 1991. The recommended functional capacity evaluation (FCE) was to determine her capabilities.
On September 23, 1991, Dr. Mayer obtained a functional capacity evaluation which indicated that Ms. Lemoine was capable of sedentary work with some restrictions. Those restrictions provided that she should not lift weights more than ten pounds and that periods of sitting or standing should not exceed ten minute intervals. Additionally, it was not recommended that she return to full time employment because of her poor overall physical condition and her complaints of chronic pain.
Because of the test results, Dr. Mayer recommended that the plaintiff see a rehabilitation specialist, and on October 30, 1991, discharged her as having reached a "maximum plateau." By this time, Dr. Mayer had reviewed Ms. Lemoine's preoperative and postoperative MRIs and agreed with Dr. Drerup's finding that there was no evidence of recurrent lumbar disc herniation. However, he still did not feel Ms. Lemoine could return to her previous employment as a nurse's assistant.
In January of 1992, Dr. Mayer consulted with Crawford & Company Health and Rehabilitation, an Alexandria, Louisiana, vocational services consulting firm, concerning Ms. Lemoine's abilities. At that time, he indicated that Ms. Lemoine had a disability rating of twenty percent, could lift a maximum of twenty-four pounds, and could work eight hours per day in sedentary or light duty work.
On January 14, 1992, Dan Maillet, a vocational consultant with the company, submitted a representative job analysis to Dr. Mayer that Maillet considered compatible with Ms. Lemoine's physical limitations. Dr. Mayer testified that he had generally approved all jobs listed as suitable for Ms. Lemoine. These potential jobs were submitted to Ms. Lemoine. According to her testimony, she investigated the jobs but was unsuccessful in finding employment which she was physically capable of performing.
Ms. Lemoine received no additional medical treatment between Dr. Mayer's release and the termination of compensation benefits on March 7, 1992. However, sometime in the late spring or early summer of 1992, the plaintiff presented herself to the Huey P. Long Charity Hospital in Pineville, Louisiana, still complaining of lower back pain. She was referred by that institution to the Louisiana State University Medical School in Shreveport, Louisiana, where she was seen by Dr. Anil Nanda, the Chief of the Neurosurgery Department. Dr. Nanda's first examination of the plaintiff in July of 1992, revealed results within a normal neurological range. On July 9, 1992, he obtained an MRI which revealed what he concluded to be scar tissue from her previous surgery at the L5-S1 level (although the prior surgery was at the L3-L4 level) as well as a small disc herniation at the L4-L5. A myelogram was then ordered and performed on November 9, 1992, which revealed mild bulging at both the L4-L5 and the L5-S1 levels. Dr. Nanda did not consider either of these findings to be a major abnormality. His diagnosis was that Ms. Lemoine was suffering from a failed back syndrome, but he also was of the opinion that additional surgery would not be appropriate. His reason for not recommending surgery was his belief that it had less than a fifty percent chance of success. Dr. Nanda suggested that the plaintiff could not perform any job that caused stress or strain, or required lifting any appreciable weight. He was not even certain the plaintiff could perform light duty work. Although he wanted to treat Ms. Lemoine conservatively with physical therapy and medication, she was not able to afford the expense of such treatment.
The next physician seen by the plaintiff whose findings were presented at trial was Dr. John T. Weiss, an Alexandria, Louisiana, orthopaedic surgeon. Ms. Lemoine first saw Dr. Weiss on June 30, 1993. Dr. Weiss recommended a lumbosacral corset and ordered an MRI. The MRI was performed on July 12, 1993, and revealed bulging at the L4-L5 and L5-S1 levels. Dr. Weiss concluded that the L5-S1 problem was congenital *449 and not traumatic in origin. In fact, Dr. Weiss was of the opinion that there was little or no natural development at the L5-S1 disc space which could easily give rise to difficulties in determining which disc might be identified as L4-L5 or L3-L4 and so on.
Dr. Weiss initially considered referring the plaintiff to another physician for an interbody fusion, but before doing so, he referred her to Dr. Arsham Naalbandian, an Alexandria, Louisiana, neurologist, for an EMG and a nerve conduction study. These test results were essentially normal other than revealing a motor deficit in the knee reflex usually consistent with the L3-L4 or L4-L5 nerve roots. Dr. Weiss then placed Ms. Lemoine in a chair back brace to better determine if a fusion would help. Ms. Lemoine reported to Dr. Weiss that the brace provided her with seventy percent pain relief.
Given all his findings, Dr. Weiss concluded a discogram would be helpful to determine if an interbody fusion would be necessary. Because he no longer performed discograms, Dr. Weiss referred the plaintiff to Dr. Thomas S. Whitecloud, a New Orleans, Louisiana, orthopaedic surgeon and Chairman of the Orthopedic Surgery Department at Tulane University Medical School. The last time Dr. Weiss saw the plaintiff was on September 2, 1993, at which time he was of the opinion she could perform light work so long as the work did not include bending or lifting anything over fifteen or twenty pounds.
The only evidence in the record of Dr. Whitecloud's treatment is a report dated October 18, 1993, which was admitted over objection at trial for the limited purpose of showing that Dr. Whitecloud intended to perform "a three level instrumented lumbar fusion" on November 18, 1993. The trial was held on November 2, 1993.
Prior to her visit with Dr. Whitecloud, the plaintiff was reexamined by Dr. Mayer. This occurred on September 22, 1993, at the request of the defendant. Before the examination, Dr. Mayer reviewed the MRI and myelogram administered in Shreveport, Louisiana, at the direction of Dr. Nanda. He concurred with Dr. Nanda's analysis that bulging existed at the L4-L5 and L5-S1 levels, but believed that these studies indicated a new injury to the lower back. After performing a physical examination of September 22, 1993, and based on his review of the recent test results, Dr. Mayer stated in a report of the same date that, "I do not feel that further surgery is indicated at this time, even though the patient continues subjectively symptomatic." He was also of the opinion the plaintiff could return to light duty work. Shortly before trial, Ms. Suzanne Douglas of Crawford & Company Health and Rehabilitation performed a labor market survey in an attempt to locate suitable employment for Ms. Lemoine. At trial she listed five regional employment opportunities she considered appropriate for Ms. Lemoine, given her disabilities.

Summary of Medical Evidence.
It is uncontradicted that the plaintiff suffered a low back injury which resulted in the surgery performed by Dr. Drerup on November 20, 1990. All the physicians questioned are of the opinion the plaintiff cannot return to her former employment; all those who examined her after the surgery are of the opinion that she is only capable of light or sedentary duty. Drs. Nanda, Weiss, and Mayer also agree that the more recent tests reveal bulging or herniation at the L4-L5 and L5-S1 levels, although they do not agree as to causation, nor do they agree as to the need for surgery regardless of causation.

ANALYSIS
After the hearing officer rendered the decision in this matter, the employer appealed, claiming eight assignments of error:
1. The Court erred in admitting into evidence Dr. Whitecloud's report where it was not in proper form and unfairly prejudiced defendant.
2. The Court erred in finding that Drs. Beurlot, Drerup, and Nanda were not the plaintiff's choice of physician.
3. The Court erred in condemning Hessmer Nursing Home to pay the medical bills of Dr. Nanda, Weiss, Naalbandian and Whitecloud.
4. The Court erred in finding Hessmer Nursing Home liable for continuing treatment *450 recommended by Dr. Weiss and Dr. Whitecloud.
5. The Court erred in finding Hessmer Nursing Home liable for supplemental earnings benefits.
6. The Court erred in awarding the plaintiff temporary total disability benefits based upon the inadmissible report of Dr. Whitecloud.
7. The Court erred in awarding the plaintiff penalties and attorney's fees.
8. The Court erred in finding that Hessmer Nursing Home arbitrarily denied a change in treating orthopedists where plaintiff stipulated that she did not request authorization to change treating orthopedists.

Assignments of Error Nos. 1 and 6
At trial, the plaintiff offered a copy of an "Orthopaedic Clinic Note" bearing the signature of Dr. Whitecloud and dated October 18, 1993. This document was offered for the limited purpose of showing that Dr. Whitecloud intended to perform surgery on Ms. Lemoine on the 18th day of November, 1993, or just sixteen days after trial. A copy of the document was given to the defendant the afternoon before trial and the defendant objected to its introduction contending, that despite the limited purpose offering, the late notice was prejudicial. The defendant argued the late notice precluded it from deposing Dr. Whitecloud or conferring with the other medical experts as to the validity of Dr. Whitecloud's opinion concerning surgery. In addition, the defendant argued that the medical records did not conform to the requirements of Hearing Officer Rule 2143 which provides for the admissibility of medical records. On the other hand, the plaintiff argued that Dr. Whitecloud's records were listed on an amendment to the plaintiff's pretrial order which the defendant received on October 26, 1993, and there was great difficulty in obtaining the records which did not arrive in his office until November 1, 1993. The records were promptly sent to opposing counsel by facsimile on that same day.
After extended argument, the hearing officer allowed the report's introduction but left the record open until February 15, 1994, to allow Dr. Whitecloud's deposition to be taken; to allow the doctor's report to be submitted to the previous treating physicians and for them to submit supplemental reports, or to obtain supplemental depositions; and to allow the defendant the opportunity to obtain an independent medical examination. The defendant immediately scheduled an examination of the plaintiff by Dr. Randall Lea of Baton Rouge, Louisiana, for November 16, 1993, but the plaintiff failed to keep the appointment. The defendant's motion to postpone the surgery until an independent medical evaluation could be obtained was denied by the hearing officer. Thereafter, the defendant failed to take any action to supplement the record.
Louisiana Revised Statutes 23:1122 allows for the submission of a medical report in lieu of testimony as prima facie evidence of the facts contained therein. However, the admission of such report must be predicated upon the serving of the report on the opposing party and his failure to object to the contents of the report within six days of service. Brown v. J. Manoco, Inc., 555 So.2d 29 (La.App. 1st Cir.1989), writ denied, 558 So.2d 585 (La.1990); Richard v. Guillot, 271 So.2d 719 (La.App. 1st Cir.1972). In Brown, a psychiatrist's report was not received by opposing counsel until nine days before trial. It had been listed as an exhibit on the plaintiff's pretrial order, but the psychiatrist was not listed or called as a witness and the defendant was not apprised that the plaintiff had actually consulted with the psychiatrist until he received a copy of the report. As such, the court found that the defendant was clearly deprived of an opportunity to adequately prepare a defense.
In the present case, Dr. Whitecloud's report was served upon the defendant approximately eighteen hours before trial. Although the report was listed as documentary evidence on the claimant's amended pretrial statement, the defendant did not receive that statement until seven days before the hearing. As the court stated in Brown, "LSA-R.S. 23:1122 is not a device to enable counsel to unexpectedly spring evidence upon the opposing party, but is a method of promoting *451 judicial efficiency and discouraging needless testimony." Id. at 31.
Still, a trial judge is vested with wide discretion in conducting trials in a manner which he or she determines to be consistent with the fair administration of justice. Reasonable questions as to the admissibility of evidence should be resolved in favor of receiving such evidence. Coignet v. Deubert, 413 So.2d 253 (La.App. 4th Cir.1982). Where a party seeks to exclude evidence on the grounds of surprise, the court may grant a "constructive continuance" by delaying the presentation of the evidence until later in the trial to give the complaining party time to prepare rebuttal evidence, and thus avoid prejudice from surprise. Anderson v. Visa, Ltd., 478 So.2d 1346 (La.App. 5th Cir.1985). Given the safeguards offered to the defendant in this case, we find no error in the hearing officer's decision to allow the filing of Dr. Whitehead's report for the limited purpose it was offered.
However, it is clear from the hearing officer's written reasons for judgment that the report of Dr. Whitecloud was considered for more than the limited purpose of showing surgery was scheduled. The hearing officer made the following finding concerning Dr. Whitecloud's treatment:
Dr. Whitecloud recommends a three level fusion to immobilize the last three mobile segments of plaintiff's spine and relieve pain. He states that the previous surgery was performed on the first mobile segment and the MRI showed degenerative discs at the last three segments. Surgery was scheduled for mid-November, 1993. (emphasis added).
The effect of using Dr. Whitecloud's report for more than the limited offering was to deny the defendant an opportunity to prepare an adequate defense as required by Louisiana Revised Statutes 23:1122. The defendant was unaware the report would be considered so extensively by the hearing officer until after the decision was rendered. As such, we find the hearing officer erred in this regard, and will consider Dr. Whitecloud's report in this review only as evidence that surgery was scheduled.
Although the defendant did not attempt to supplement the record, the plaintiff did. By letter dated February 28, 1994, the plaintiff offered the medical records of Tulane University Medical Center and Dr. Whitecloud concerning the actual surgery. The defendant objected to the introduction of those records and that objection was sustained in the reasons of the hearing officer with the following comment:
On March 2, 1994, the Agency received medical reports of Tulane University Medical Center and Dr. Thomas S. Whitecloud, III relative to plaintiff's back surgery of November 18, 1992. Defendant objected to the introduction into evidence of these records. It is the finding of the Office of Workers' Compensation that the record was not held open for the purpose of allowing plaintiff to offer additional evidence, but only to allow defendant the opportunity to respond to the October 18, 1993 report of Dr. Whitecloud.... The objection is sustained and the records are not considered. (emphasis added).
This ruling had the effect of eliminating any evidence of Ms. Lemoine's surgery from the record. Thus, we find the hearing officer erred in awarding temporary total disability benefits commencing with the November 18, 1993 surgery pursuant to Louisiana Revised Statutes 23:1221. However, Louisiana Revised Statutes 23:1310.8(B) allows a hearing officer to reconsider a matter where there has been a change in conditions warranting such an action. In this case, the plaintiff may petition the hearing officer for reevaluation of the award upon proof of a change in her disability.

Assignment of Error No. 5
The hearing officer found that Ms. Lemoine suffered a low back injury on May 24, 1990, but had not carried her burden in proving entitlement to temporary total disability benefits as of March 7, 1992, when benefits were terminated. However, supplemental earnings benefits were awarded to the plaintiff from March 7, 1992, and the defendant contends this award was in error. Before addressing the remaining assignments, it is necessary that the court address this contention.
*452 This court has long held that the finding of disability within the framework of the workers' compensation statute is a question of fact. Dugas v. Rosary House, 635 So.2d 570 (La.App. 3d Cir.1994). Therefore, an appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). The great deference afforded a trial court's finding of fact extends with equal force to workers' compensation cases. Ducote v. J.A. Jones Construction Company, 471 So.2d 704 (La.1985).
In order for a plaintiff to qualify for supplemental earnings benefits, he or she must prove by a preponderance of the evidence that a work-related injury rendered the plaintiff unable to earn ninety percent of pre-injury wages. La.R.S. 23:1221(3)(a). Therefore, the plaintiff must first establish that her current condition was, in fact, caused by the accident of May 24, 1990.
In Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320 (La. 1985), the supreme court established the appropriate burden of proof for the element of causal connection:
As in other civil suits the employee in a worker compensation proceeding initially has the burden of establishing his disability and its causal relation with the employment accident by a preponderance of the evidence. In order for the employee to recover, it must be determined that the employment somehow caused or contributed to the disability, but it is not necessary that the exact cause be found. A claimant's disability is presumed to have resulted from an accident, however, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing either that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and the disabling condition, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection.

Id. at 324 (citations omitted).
Additionally, as recognized by the hearing officer:
Where an injured worker proves the occurrence of an accident and subsequent disability, and where there is no proven intervening cause, a presumption is raised that the work-related accident caused the disability. The burden then switches to the employer and insurer to prove the absence of a causal connection between the accident and the injury. Bruno v. Guaranty Bank & Trust Co., 617 So.2d 1351 (La.App. 3 Cir.1993); R.S. 23:1031.
The hearing officer made the following findings of fact relative to the causation issue:
There was no dispute that plaintiff sustained an accident at work and suffered a back injury. She sought immediate medical attention and her history of an accident and resulting pain was consistent when followed by all treating physicians. In fact, plaintiff continued to complain of the same or similar pain immediately following her November, 1990 surgery. There has been no showing that plaintiff's back condition was symptomatic in this way immediately before the accident. Therefore, plaintiff is entitled to use of the presumption where she was in relatively good health before the accident, but commencing with the accident the symptoms of the present condition appeared and continuously manifested themselves afterward. Medical evidence shows that there is a reasonable possibility of causal connection between the accident and the present condition. Specifically, an L4-5 disc bulge was noted on [sic] MRI performed October 14, 1990 and July 10, 1992 and confirmed by Dr. Mayer on reexamination September 22, 1993. There has been no proof of any intervening cause.
Accordingly, it is the finding of the Office of Workers' Compensation that plaintiff's present back condition was caused by the accident at work on May 24, 1990.
The conflict in medical testimony was resolved in favor of the plaintiff as to causation, *453 and we find no manifest error in that determination.
Once causation was established, and once the plaintiff established she had been unemployed since the date of the accident, the burden then shifted to the defendant to prove that employment is available to the plaintiff which would earn her at least ninety percent of her former wages. Louisiana Revised Statutes 23:1221(3)(c)(i) provides:
Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region. (Emphasis added).
In the present case, there is no medical dispute but that Ms. Lemoine is unable to return to her former employment as a nurse's aide. However, the physicians agree that she is at least capable of sedentary to light duty work. In considering the defendant's attempts to overcome the burden to show work is available to the plaintiff, the hearing officer made the following findings:
Defendant sought to meet this burden through the efforts of Dan Maillet and Suzanne Douglas, vocational rehabilitation consultants.
The efforts of Mr. Maillet are considered inadequate to meet defendant's burden. Mr. Maillet merely located job descriptions found in the Dictionary of Occupational Titles and obtained an estimate of functional capacity by Dr. Mayer. No specific information has been offered on who the specific employers were for the jobs he found, where the jobs were located, how long most of the jobs may have been open, how many applicants there were for each job, the specific job duties required by each job, whether any prospective employer was aware of the claimant's physical restrictions, and whether claimant's physical restrictions would prevent her from performing any of the job duties. A showing of job availability would require that answers to these questions, at least, be provided to assess whether or not the job is truly available to a particular employee.
The efforts of Ms. Douglas are also considered to be inadequate to meet defendant's burden in this case. Ms. Douglas opined that plaintiff was able to perform the jobs she located, which were somewhat more specific as to employer name, salary, and job duties, but she failed to review all pertinent medical records before giving that opinion. Her opinion was apparently based on those records which were most favorable to the defense. She was not aware that Dr. Whitecloud recommended surgery and she did not review the records of Dr. Kalifey, the depositions or records of Dr. Nanda, Weiss, the LSU Medical Center or the report of Dr. Whitecloud.
On cross examination, Ms. Douglas would not give an opinion on plaintiff's ability to perform the jobs she located, assuming the need for additional surgery.
Thus, the hearing officer found that the plaintiff established she was not physically able to perform any of the jobs provided by her employer.
However, the defendant argues that physical inability to perform is not enough, and the plaintiff has failed to establish by clear and convincing evidence that, solely as a consequence of substantial pain, she is unable to engage in any employment. La.R.S. 23:1221(3)(c)(ii). However, this statute requires that the plaintiff need only meet the clear and convincing burden as to employment "offered, tendered, or otherwise proven to be available to him...." La.R.S. 23:1221(3)(c)(ii). We have previously held:
Entitlement to benefits under the worker's compensation act is based upon the claimant's *454 ability or inability to earn wages. Under La.R.S. 23:1221(3)(c)(i), if an employee is not working, then the employer must prove that employment which the claimant is physically able to perform has been offered or is available.

Tassin v. CIGNA Insurance Company, 583 So.2d 1222, 1226 (La.App. 3d Cir.1991) (citations omitted).
In this case, the plaintiff established that there was no employment offered, tendered, or otherwise available to her that she was physically able to perform. Therefore, the employer failed to establish its burden of proving that the plaintiff is capable of earning ninety percent of her former wages and the hearing officer's ruling is affirmed.

Assignments of Error Nos. 2, 3 and 4
The issues raised in these assignments involve the plaintiff's choice of physician. The defendant contends that Dr. Beurlot was the plaintiff's choice of orthopaedic surgeon and Dr. Drerup was her choice of neurosurgeon. Based on this contention, the defendant argues it should not be responsible for the medical expenses of Drs. Nanda, Weiss and Whitecloud. The hearing officer reasoned that Dr. Beurlot was the defendant's choice of orthopaedic surgeon since the defendant's doctor, Dr. Kalifey, had referred Ms. Lemoine to him. Because Dr. Beurlot referred Ms. Lemoine to Dr. Drerup, the hearing officer concluded that Dr. Drerup then became defendant's choice of neurosurgeon.
Ms. Lemoine sought permission from the third party administrator of the defendant's workers' compensation benefits program to consult Dr. Mayer, and that permission was granted. At trial, the plaintiff stipulated that she only sought permission to see Dr. Mayer and that he was her choice of orthopaedic surgeon. Because Ms. Lemoine's benefits had been terminated when she was referred to Dr. Nanda, the hearing officer concluded that Dr. Nanda was not the plaintiff's choice of neurosurgeon. Pursuant to that analysis, Dr. Weiss became the plaintiff's initial choice of neurosurgeon.
Louisiana Revised Statutes 23:1121 provides, in part:
B. The employee shall have the right to select one treating physician in any field or specialty. After his initial choice the employee shall obtain prior consent from the employer or his worker's compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty. (emphasis added).
The defendant relies on the decision of this court in Fontenot v. Fireman's Fund Insurance Company, 549 So.2d 917 (La.App. 3d Cir.1989), in support of its position that where an employee changes doctors without consent of the employer, the employer is not responsible for the expenses incurred for treatment by that doctor. We cannot agree with the defendant's interpretation of Fontenot. In that case, this court affirmed the hearing officer's denial of payment of certain medical expenses based on the hearing officer's conclusion that they were not medically necessary, not because the employee changed doctors without consent.
Louisiana Revised Statutes 23:1121 must be read in conjunction with the other provisions of Title 23, including Louisiana Revised Statutes 23:1203, which provides in part that:
A. In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. (emphasis added).
This article has been interpreted by this court to allow an employee to recover medical expenses for treatment by a physician incurred without seeking approval from the employer even though the employee had been examined by two other physicians in the same field. Stelly v. United Parcel Service, 600 So.2d 156 (La.App. 3d Cir.1992). The only requirement is that the hearing officer conclude the treatment is both reasonable and necessary to alleviate the claimant's *455 symptoms. The employer is then bound to provide for those expenses with the exception of the initial unauthorized visit. Id.
We find the hearing officer erred in imposing liability for the medical expenses associated with the first visit to Drs. Nanda and Weiss, but find no error in the award of the remainder of these doctors' medical charges. We also find that the hearing officer erred in awarding the medical expenses associated with Dr. Whitehead's treatment as the plaintiff stipulated at trial that she was not seeking reimbursement for those expenses.
In addition, the hearing officer also found the defendant liable for the expenses incurred as a result of the EMG and nerve conduction study performed by Dr. Naalbandian at the request of Dr. Weiss. A physician who is treating a workers' compensation claimant is entitled to seek whatever consultations are medically necessary to determine the claimant's course of treatment. Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277 (La.1993); Chevalier v. L.H. Bossier, Inc., 617 So.2d 1278 (La.App. 3d Cir.1993). Dr. Weiss testified that he had the reports prepared in order to determine the most effective treatment for the plaintiff. As a result of his findings, Dr. Weiss was able to recommend a chair back brace to the plaintiff which provided her with approximately seventy percent pain relief. Therefore, the hearing officer was correct in holding the defendant liable for these expenses as well.
The plaintiff, in conjunction with this issue, answered the appeal seeking travel expenses associated with her medical treatment with these doctors. Louisiana Revised Statutes 23:1203(C) provides:
C. In addition, the employer shall be liable for the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the employee in order to obtain services, medicines, and prosthetic devices which the employer is required to furnish under this Section. When the employee uses his own vehicle, he shall be reimbursed at the same rate per mile as established by the state of Louisiana for reimbursement of state employees for use of their personal vehicle on state business. The office shall inform the employee of his right to reimbursement for mileage.
In this case, the plaintiff failed to establish for the record the travel expenses incurred as a result of her medical treatment by the various doctors. The plaintiff must have had this information at trial, but failed to introduce it in the record. Therefore, we are unable to award any travel expenses incurred.

Assignments of Error Nos. 7 and 8
The final issues for review are whether penalties and attorney fees pursuant to Louisiana Revised Statutes 23:1201 and 1201.2 were properly assessed against the defendant. Louisiana Revised Statutes 23:1201 provides for a twelve percent penalty on all untimely payments of benefits, unless the employee's right of compensation or medical benefits has been reasonably controverted. Louisiana Revised Statutes 23:1201.2 provides for the payment of reasonable attorney fees when the failure to pay benefits is arbitrary, capricious, or without probable cause.
In the present case, the hearing officer found that Ms. Lemoine's right to compensation or medical benefits had not been reasonably controverted by the defendant and that the failure to pay benefits was arbitrary and capricious. Statutory penalties and legal interest on all amounts were awarded, as well as $4,500.00 in attorney fees.
In Thibodeaux v. Cajun Restaurant, 635 So.2d 522 (La.App. 3d Cir.1994) this court cited with approval the reasoning in the second circuit case, Bradley v. Justiss Oil Company, Inc., 618 So.2d 646 (La.App. 2d Cir. 1993), in which that court explained:
The determination of whether an employer should be cast with penalties and attorney fees is essentially a question of fact and the trial court's finding shall not be disturbed on appeal absent manifest error.
Whether reduction or termination of workers' compensation benefits is without probable cause so as to render the employer liable for attorney fees and penalties depends primarily on facts known by the *456 employer at the time of its action. When a reduction or termination is based on legitimate disputes as to extent or cause of claimant's disability, penalties and attorney fees will not be awarded. A workers' compensation claim is "reasonably controverted," precluding imposition of penalties and attorney fees, if the employer had sufficient factual and medical information upon which to base a decision to reduce or terminate benefits.
Thibodeaux, 635 So.2d at 526 (citations omitted).
However, the jurisprudence has also established that an employer can be arbitrary and capricious if he fails to "make a reasonable effort to ascertain an employee's exact medical condition before benefits are terminated." Johnson v. Insurance Company of North America, 454 So.2d 1113, 1117 (La.1984). If an insurer terminates benefits based on the findings of an optimistic report and later receives information indicating a continuing disability, the insurer "may not blindly rely upon the earlier report to avoid penalties for arbitrary nonpayment of compensation benefits." Id.
In this case, the medical evidence is in conflict as to causation. The plaintiff's own physician, Dr. Mayer, released her for light duty employment and approved the various employment job descriptions submitted by the vocational consultant with Crawford & Company in January of 1992. Based on this information, benefits were terminated. The only evidence at that time that Ms. Lemoine could not perform the employment opportunities available and approved by Dr. Mayer was the testimony of Ms. Lemoine herself. Thereafter, even though the defendant was made aware of the treatment by Dr. Nanda and Dr. Weiss, as well as the results of more recent tests, that knowledge was offset by the opinion of Dr. Mayer that any current low back difficulty was the result of a new injury. We find that the hearing officer erred in awarding penalties and attorney fees as the plaintiff's right to draw benefits had been reasonably controverted.
Because we reverse that portion of the judgment awarding penalties and attorney fees, we also find that plaintiff's answer to the appeal requesting additional attorney fees is without merit.

CONCLUSION
For the reasons stated herein, the judgment of the hearing officer awarding the plaintiff temporary total benefits from November 18, 1993, until her medical condition changes is reversed; the judgment awarding the plaintiff supplemental earnings benefits from March 7, 1992, through November 18, 1993, is affirmed except that the said benefits are awarded until her medical condition changes rather than through November 18, 1993; the judgment awarding the plaintiff recovery of the medical expenses of Drs. Nanda, Weiss, and Naalbandian is affirmed as to all amounts except the initial visits to Drs. Nanda and Weiss; the judgment awarding the plaintiff recovery of the medical expenses of Dr. Whitecloud is reversed; and the judgment awarding the plaintiff penalties and attorney fees is also reversed. All costs are assessed against the defendant.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.