# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 11-27

DUSTIN RUSSELL

VERSUS

H & H METAL CONTRACTORS, INC., ET AL.


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 3
PARISH OF CALCASIEU, NO. 09-08835
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE


\*\*\*\*\*\*\*\*\*\*


**MARC T. AMY**
**JUDGE**


\*\*\*\*\*\*\*\*\*\*


Court composed of John D. Saunders, Oswald A. Decuir and Marc T. Amy, Judges.

**AFFIRMED AS AMENDED. ADDITIONAL ATTORNEY FEES
AWARDED FOR WORK PERFORMED ON APPEAL.**


H. Douglas Hunter
Guglielmo, Lopez, Tuttle, Hunter & Jarrell, L.L.P.
Post Office Drawer 1329
Opelousas, LA   70571-1329
(337) 948-8201
COUNSEL FOR DEFENDANTS/APPELLANTS:
       H & H Metal Contractors, Inc.
       Bridgefield Casualty Insurance Company


Gregory P. Marceaux
2901 Hodges Street
Lake Charles, LA   70601
(337) 310-2233
COUNSEL FOR PLAINTIFF/APPELLEE:
       Dustin Russell

AMY, Judge.

Finding that the claimant had suffered a work-related compensable injury and that the employer had inappropriately terminated benefits, the workers' compensation judge awarded indemnity benefits, medical expenses, penalties, and attorney fees. The employer appeals. For the following reasons, we affirm, as amended. We award the claimant attorney fees for work performed on appeal.

**Factual and Procedural Background**

The employer, H & H Metal Contractors, Inc., is in the business of erecting metal buildings and sheds. The claimant, Dustin Russell, was employed by H & H as a helper. The facts of the accident are not in dispute. Russell and his co-worker, Jay Henry, were at one of H & H's work sites on May 13, 2009, installing insulation. Russell explained that while standing on the building's frame, he would drop a length of foil-backed insulation to Henry, who would catch the end of the insulation and "stick" it to the building's frame. While the two were working in this manner, a gust of wind caught a piece of insulation and blew it into a nearby power line. Russell was shocked, fell from the building, and was unconscious for some time. Henry called emergency services, and Russell was taken to Lake Charles Memorial Hospital. Russell was diagnosed with compression fractures to his T-12 and L-1 vertebrae.

A drug screen performed while Russell was at the hospital returned positive results for both marijuana and opiates. Nonetheless, H & H's workers' compensation insurer, Bridgefield Casualty Insurance Company, provided indemnity and medical benefits to Russell. During that time, Russell saw three orthopedists. Bridgefield claimed that it allowed Russell to switch doctors, despite the existence of signed "Choice of Physician" forms, due to alleged conflicts between Russell and his first two doctors.

After almost a year, Bridgefield terminated Russell's indemnity and medical benefits. Bridgefield attributed the termination to Russell's "doctor shopping," "untruthfulness," and "mental instability." Bridgefield also argued that the positive result of the drug screen gave it ample reason to terminate Russell's benefits. Bridgefield contested whether Russell had been re-released to light duty after his third orthopedist, Dr. Clark Gunderson, put him on "no work" status.

After his benefits were terminated, Russell filed this claim, alleging that his indemnity rate was incorrectly calculated; that his indemnity benefits had been inappropriately terminated; that medical treatment was not authorized; that he was denied his choice of physician; and that there was a dispute as to his disability status. He additionally sought penalties, attorney fees, and legal interest.

At the hearing, the parties stipulated that Russell suffered a work-related injury. The workers' compensation judge found that Russell suffered a compensable injury on May 13, 2009, and that he has been temporarily and totally disabled from that date. The workers' compensation judge awarded: indemnity benefits in the amount of $333.33 per week from April 15, 2010 forward; pain management as prescribed by Dr. Gunderson; penalties for failure to pay the correct indemnity payments in the amount of $8,000.00; penalties for terminating benefits in the amount of $8,000.00; and attorney fees in the amount of $18,750.00.

H & H and Bridgefield appeal, asserting the following assignments of error:

1. The trial court erred in admitting Dr. Gunderson's July 9, 2010 letter, which led to a manifestly erroneous finding that he has been disabled since the date of his workplace accident.

2. The trial court erred in awarding penalties and attorney's fees in light of Mr. Russell's positive drug test results.

2

3.      Alternatively, if penalties were properly awarded despite Mr. Russell's positive drug test results, the trial court erred in awarding $16,000.00 in penalties.

The claimant filed an answer to the appeal, seeking attorney fees for work done on appeal.

## Discussion

*First Assignment of Error (Determination of Compensability)*

In their first assignment of error, the appellants (hereinafter "H & H") assert that the workers' compensation judge erred in admitting into evidence a letter from Dr. Gunderson, dated July 9, 2010, and that, because of that error, erred in finding that Russell was temporarily and totally disabled (TTD) from the date of the accident.

<u>Evidentiary Issues</u>

The hearing related to a workers' compensation claim is governed by La.R.S. 23:1317, which states, in relevant part:

> The workers' compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence. . . . The workers' compensation judge shall decide the merits of the controversy as equitably, summarily, and simply as may be.

"A trial judge is vested with wide discretion in conducting trials in a manner which he or she determines to be consistent with the fair administration of justice." *Lemoine v. Hessmer Nursing Home*, 94-836, p. 11 (La.App. 3 Cir. 3/1/95), 651 So.2d 444, 451. When there is a "reasonable question" regarding the admissibility of evidence, admission of the evidence is favored. *Id.* If the reason for seeking the exclusion of the evidence is surprise, the trial court may grant a "constructive continuance," so that the party seeking exclusion may avoid prejudice by preparing or obtaining rebuttal evidence. *Id.*

3

Louisiana Code of Civil Procedure Article 1551 provides for pretrial orders and "gives a court wide discretion to provide for . . . pretrial order[s] and to insure that the terms of the pretrial order are enforced." *Vernon v. Wade Correctional Inst.*, 26,053, p. 5 (La.App. 2 Cir. 8/19/04), 642 So.2d 684, 688. Although the trial court has wide discretion in determining whether to modify a pretrial order, it must be tempered by "the principle that it must be exercised to prevent substantial injustice to the parties who have relied on the pretrial rulings or agreements and structured the preparation and presentation of their cases accordingly." *Id.* at 689. Notably, one of the bases for pretrial procedure is the avoidance of surprise. *Id.*

In *Lemoine*, 651 So.2d 444, a panel of this court addressed, in the context of a workers' compensation case, the admissibility of a "Clinic Note" provided to the employer the afternoon before trial. The employer objected to the introduction of the note, arguing that the late notice was prejudicial, that it precluded the employer from deposing the doctor and/or conferring with other medical experts regarding the doctors' conclusions, and that the late notice did not comport with the notice rules then in effect. The plaintiff contended that the note was listed on an amended pretrial order submitted a week before trial and that the plaintiff also received the report the day before trial. *Id.*

The note at issue in *Lemoine* was admitted for the limited purpose of showing that surgery was scheduled. The workers' compensation judge left the record open for the doctor's deposition and/or other supplemental reports and depositions to be submitted, and allowed the employer an opportunity to obtain an independent medical examination. *Lemoine*, 651 So.2d 444. The employer unsuccessfully attempted to

4

schedule an independent medical examination and ultimately submitted no additional evidence into the record.

On appeal, this court found that, given the additional safeguards provided by the workers' compensation judge, that there was no error in the admission of the note for the limited purpose of showing that surgery was scheduled. *Lemoine*, 651 So.2d 444. However, the court found that, after admitting the note for a limited purpose, the workers' compensation judge went on to rely on the substantive portions of the note, including medical conclusions, in rendering judgment. The court noted that "the [employer] was unaware the report would be considered so extensively by the hearing officer until after the decision was rendered," and that this denied the employer "an opportunity to prepare an adequate defense." *Id.* at 451.

The hearing in this case began on July 14, 2010. Pretrial statements were filed on June 22, 2010 and June 25, 2010, respectively. The transcript indicates that H & H was provided with a copy of Dr. Gunderson's July 9, 2010 letter on July 13, 2010. At the hearing, H & H's counsel objected to the admission of the letter, alleging that:

> [i]t changes things that aren't found in his prior records and basically apparently is what this is. There was something posed to Dr. Gunderson and he responded to it, which is in a deposition that would be the direct examination. Well, I haven't been provided an opportunity to cross Dr. Gunderson on some of these things; and just for instance, one thing he talks about this guy being disabled the whole time he treated him. His medical records don't show that. His medical records show that on his first visit, November 5th or 4th of 2009, he has a sheet that says patient is disabled. Okay, he sees him in December, twice in March, never says that he is disabled. And now I get a report the day before trial saying he was disabled the whole time he was treating him, so there's a change in what his records say, and I haven't been given the opportunity to cross examine this guy about it. . . .

Russell's attorney contended that Dr. James Perry and Dr. Gidman were H & H's choice of physician and argued that, because the depositions of Dr. Perry and Dr.

Gidman had been taken after the discovery deadline, he requested a report from Dr. Gunderson "to give me his findings and opinions. . . ." H & H and Russell disputed whether Dr. Perry and Dr. Gidman were Russell's choice of physician.[1] The workers' compensation judge admitted the letter over objection, stating that "the only way to flesh it out is to put it in, flesh it out, so I will let this in. I will note your objection, but I will let it in . . . understanding what you just said."

Russell's pretrial statement, filed June 22, 2010, lists Dr. Gunderson and "any health care provider" as a potential witness and "[a]ll medical records" as potential exhibits. Dr. Gunderson is not listed as a witness whose deposition needed to be taken. H & H's pretrial statement, filed June 25, 2010, lists Dr. Gunderson's medical records as potential exhibits and includes Dr. Gunderson as a potential witness. H & H lists Dr. Perry and Dr. Gidman as witnesses whose deposition needed to be taken. No motions, written or oral, were filed seeking to amend the pretrial statements.

Neither Dr. Perry, Dr. Gidman, nor Dr. Gunderson was called as a witness at the hearing. Copies of Dr. Perry and Dr. Gidman's depositions were submitted into evidence. There is no evidence that Dr. Gunderson's deposition was taken.

Dr. Gunderson's July 9, 2010 letter states in part:

> The patient returned on 3-31-10. He continued to have thoracolumbar pain with pain radiating into his right leg. With any activity he developed increased pain. He remained neurologically intact. He was walking normally, and could bend over so that his fingertips were 6 inches from the floor. I discussed with the patient that he would probably need vocational rehabilitation with job modifications. I advised him to increase his activities and return in 2 months. Arrangements were subsequently made for the patient to be seen in pain management with Dr. Dan Hodges in Lafayette. To this point the patient remains totally disabled. I would anticipate that he would need

---

[1] H & H submitted signed "choice of physician" forms for Dr. Perry and Dr. Gidman; Russell contended that H & H misrepresented the purpose of the forms in order to induce him to sign them.

a functional capacity evaluation in an effort to return him to some type of gainful employment. He will have an impairment rating of 10% to the body as a whole.

Dr. Gunderson's medical records were submitted into evidence. A review of those records indicates that Russell's last visit with Dr. Gunderson was on March 31, 2010. The notes from that visit, which are handwritten and partially illegible, support H & H counsel's contention that the letter "changes things that aren't found in his prior records," as the notes do not indicate that Russell has a 10% impairment rating. Neither do they indicate that he needs a functional capacity evaluation. "No Duty" is circled next to "Current Work Status" on the notes.[2]

From a review of the record, it does not appear that the workers' compensation judge revisited the issue of whether Dr. Perry and Dr. Gidman were Russell's choice of physician. The workers' compensation judge delivered oral reasons for ruling, stating, in relevant part:

> The treating physician, the one who had the most frequent and recent contact with the injured worker in this case, Dr. Gunderson, is convinced that Mr. Russell is in fact disabled at this point and needs a functional evaluation exam to help decipher precisely what type of employment he can perform. Dr. Gunderson suggests an impairment rating of ten percent, as I recall.

The workers' compensation judge went on to find, in part, that Russell was temporarily and totally disabled from the date of the accident.

We find that it was an abuse of discretion for the workers' compensation judge to admit the July 9, 2010 letter from Dr. Gunderson. Although Russell's pretrial statement lists "medical records"[3] as potential evidence, it does not list substantive

---

[2] At the hearing, H & H's adjuster testified that, in his previous experience, "No Duty" circled on Dr. Gunderson's notes indicates that the patient is not currently working, not that the patient is unable to work.

[3] H & H did not object to the entry of Dr. Gunderson's medical records.

letter updates, which the employer's characterization likened to a medical report, nor does it indicate that Dr. Gunderson's deposition needed to be taken. The record does not contain any indication that an amended pretrial statement was filed.

The letter was provided to H & H one day before the hearing and not only transcribes but expounds on the information provided in Dr. Gunderson's medical records. The letter was not admitted for any limited purpose and was relied upon by the workers' compensation judge in rendering judgment. Further, although H & H did not request a continuance in order to depose Dr. Gunderson or to prepare appropriate rebuttal evidence, the workers' compensation judge did not order other palliative measures that would protect H & H's rights, e.g., holding the record open to allow H & H to submit Dr. Gunderson's deposition or other rebuttal evidence.

When the trial court makes a consequential but erroneous ruling and the appellate court has a complete record, it is not necessary to remand the case for a new trial. *Cangelosi v. Our Lady of the Lake Reg'l Med. Ctr.*, 564 So.2d 654 (La.1989) (citing *Gonzales v. Xerox Corp.*, 320 So.2d 163 (La.1975)). Instead, the appellate court can render a judgment based on an independent review of the record without according any weight to the judgment of the trial court. *Id.*

Under these circumstances, we find that the admission of Dr. Gunderson's July 9, 2010 letter was an erroneous ruling and, therefore, we do not consider the letter as evidence. However, in order to warrant a *de novo* review, the error must be also be "serious" and "consequential." *See Cangelosi,* 564 So.2d 654. As detailed below, we find that the workers' compensation judge's ruling that Russell was disabled since the accident is amply supported by the remainder of the record. We therefore decline to render judgment based on an independent review of the record. *See Quinn v.*

*Vidalia Apparel*, 10-712 (La.App. 3 Cir. 12/8/10), 54 So.3d 123 (finding a *de novo* review was not warranted where a workers' compensation judge applied an incorrect standard with regard to attorney fees and penalties); *Boothe v. Roofing Supply, Inc. Of Monroe*, 39,122 (La.App. 2 Cir. 1/20/05), 893 So.2d 123 (finding that, even though the workers' compensation judge referred to an incorrect standard in finding that an insurer did not reasonably controvert the employee's claim, there was no manifest error or abuse of discretion in the judge's ruling).

Entitlement to TTD Benefits

H &H's first assignment also contends that, due to the error in admitting Dr. Gunderson's July 9, 2010 letter, the workers' compensation judge erred in finding that Russell was disabled since the date of his accident. As discussed above, the workers' compensation judge erred in admitting Dr. Gunderson's letter. However, we find that there is ample other evidence in the record to support the workers' compensation judge's ruling that Russell was disabled since the date of his accident. We note that a workers' compensation judge's factual findings, including the credibility of the employee's testimony and whether the employee met his burden of proof, are not to be disturbed on appeal absent manifest error. *Rivers v. Bo Ezernack Hauling Contractor, Inc.*, 09-991 (La.App. 3 Cir. 3/10/10), 32 So.3d 1091, *writ denied*, 10-807 (La. 6/4/10), 38 So.3d 309.

In order to qualify for TTD benefits, Russell was required to meet the burden of proof required in La.R.S. 23:1221(1)(c). It states, in relevant part:

> [C]ompensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment[.]

The parties stipulated that Russell suffered a work-related injury. Russell's medical records and testimony indicate: that, as a result of the fall, he suffered a "mild" compression fracture to his T-12 and L-1 vertebrae; that he had electrical burns on his left and right thumbs; that he suffered from spasms and headaches; and that he had heart palpitations as a result of the shock. Dr. Perry and Dr. Gidman's deposition testimony indicated that, although they both considered Russell's fractures to be healed, Russell would need physical therapy before he could return to work. Dr. Gidman released Russell to light duty in September 2009, but was unable to reassess Russell because he subsequently discharged Russell from his care.[4]

Russell testified that, when he was released to light duty, he suffered from severe muscle spasms, pain, and headaches. He explained that he attempted to work for two weeks of light duty, but that there was not much light duty available due to the nature of H & H's business. According to Russell, he swept the floors and "milked the clock." Russell contended that he was sent home every day after a few hours because there wasn't enough light duty work. Russell also testified that on at least one occasion, the foreman made him carry heavy objects and told him he would be fired if he didn't comply. Russell was laid off on October 16, 2009, due to a lack of light duty work.

Russell began treatment with Dr. Gunderson who, notably, placed Russell on "no work" status. His records do not indicate that he revisited the issue. As Russell's last treating physician, Dr. Gunderson was most familiar with Russell's physical condition. The notes from Russell's last visit with Dr. Gunderson indicate that

---

[4] H & H contends that Russell threatened Dr. Gidman after he was released to light duty. Although Russell denies that he made threats, the record indicates that Dr. Gidman was sufficiently concerned that he discharged Russell from his care.

Russell's current work status was "no duty." Although Dr. Perry and Dr. Gidman opined that they expected Russell's injury to resolve within six to nine months from the date of the accident, Dr. Gidman in particular testified that he could not determine when Russell would be fully recovered.

The workers' compensation judge, in his reasons for ruling, noted that Dr. Gunderson "had the most frequent and recent contact with the injured worker." A review of Dr. Gunderson's records supports the workers' compensation judge's conclusion that Russell remained disabled under the provisions of La.R.S. 23:1221(1). Thus, the workers' compensation judge did not err in finding that Russell was disabled from the time of the accident.

Intoxication

H & H contended at the hearing that, even if Russell was disabled due to the accident, his intoxication at the time of the accident precludes his recovery for workers' compensation benefits. Louisiana Revised Statutes 23:1081 prohibits compensation for injuries caused by the injured employee's intoxication at the time of the injury; once the employer meets its burden of proving that the claimant was intoxicated at the time of the injury, the burden of proof shifts to the claimant to prove that the intoxication was not a contributing cause of the accident. *See Negri v. Authement Const., Inc.*, 09-584 (La.App. 4 Cir. 10/14/09), 28 So.3d 1071, *writ denied*, 10-848 (La. 6/18/10), 38 So.3d 327.

On this issue, H & H submitted into evidence its drug testing policy, a release signed by Russell concerning the disclosure of drug test results, a random drug screen performed on March 12, 2009, and a urine drug screen performed on May 13, 2009. The March 12, 2009 drug screen indicated negative results. The May 13, 2009 drug

11

screen was performed at Lake Charles Memorial Hospital after Russell was admitted post-accident. It indicates "positive" results for opiates and marijuana.

Even if, based on this evidence, Russell was intoxicated at the time of the accident, the testimony at trial indicates that the claimant adequately satisfied his burden that the accident was not of the nature that any intoxication was a contributing cause. La.R.S. 23:1081(12). *See also Savoy v. Cecil Perry Imp. Co.*, 96-889 (La.App. 3 Cir. 2/5/97), 691 So.2d 702. Jay Henry, Russell's supervisor, testified that the accident was a "freak accident" that happened in a "split second." He further testified that Russell did not appear intoxicated at the time of the accident and that there was no way that Russell could have prevented the accident. The workers' compensation judge, in his reasons for ruling, stated that he "was not certain that sobriety would have acted as much of an electrical insulator and things would have turned out any differently than they did."

Based on this evidence, we find that the workers' compensation judge's conclusion that Russell's alleged intoxication was not a contributing cause of his accident is supported by the record. Thus, we find no merit in H & H's contention that Russell's alleged intoxication precludes his entitlement to workers' compensation benefits.

Misrepresentation

H & H also contended at the hearing that Russell's misrepresentations warrant a denial of benefits. Louisiana Revised Statutes 23:1208 provides for the forfeiture of future workers' compensation benefits and the restitution of previously paid benefits upon proof of an employee's willful misrepresentation for the purpose of obtaining workers' compensation benefits. The employer must show that "(1) there

is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment." *Int'l Maint. Corp. v. Stoddard*, 05-676, p. 3 (La.App. 3 Cir. 12/30/05), 918 So.2d 1077, 1079 (citing *Resweber v. Haroil Const. Co.*, 94-2708, 94-3138 (La. 9/5/95), 660 So.2d 7).

The evidence adduced at the hearing indicates that H & H established several inconsistencies in Russell's testimony. Russell's statements about the details of the accident were inconsistent—for instance, his accounts of the height of the fall, the surface upon which he fell, and the length of time that he was unconscious all varied. Further, H & H established through medical records and police reports that, despite his representation that he had not been in any car accidents or that he had a substance abuse problem, Russell had previously been involved in a one car accident and was apprehended by the police with a "large" plastic bag full of "medication that did not belong to him" and that he had "taken a bunch of pills." Russell's medical records from that incident indicate that he was treated for a "probable" overdose.

Although the record indicates that Russell made several inconsistent statements or omissions about his prior medical history, "not every false statement supports a finding of fraud." *Int'l Maint. Corp.*, 918 So.2d at 1079. The false statement must be made for the purpose of obtaining benefits. *Id.* The workers' compensation judge rejected H & H's contention that these inconsistencies amounted to "doctor shopping" or "drug seeking" behavior, noting that H & H authorized all of the changes in treatment. The workers' compensation judge further stated that the "drug seeking allegation stands on very weak underpinnings. For a man with a broken back to call his own doctor and ask for pain relief does not necessarily paint a picture of

13

a 'drug seeker' in the pejorative sense that the term is used in workers' compensation cases." Notably, H & H stipulated to the existence of a work-related accident.

Based on this evidence, we do not find that H & H met their burden of proving that Russell's inconsistent statements or omissions were made for the purpose of obtaining benefits. Therefore, the workers' compensation judge did not err in rejecting that contention.

In sum, we find that the workers' compensation judge's ruling regarding the award of TTD benefits was supported by adequate evidence. This assignment of error is without merit.

*Second and Third Assignments of Error (Penalties and Attorney Fees)*

In its second and third assignments of error, H & H contests the workers' compensation judge's imposition of penalties and attorney fees. It asserts both that the award was in error on substantive grounds and that the amount awarded was in error.

Louisiana Revised Statutes 23:1201 provides for the assessment of penalties and attorney fees, in pertinent part, as follows:

> F. Failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. . . . Penalties shall be assessed in the following manner:
>
> . . . .

14

(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

. . . .

I. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims.

The determination of whether penalties and attorney fees should be awarded is a finding of fact and should not be disturbed on appeal absent manifest error. *Rivers*, 32 So.3d 1091. "However, when there are errors of law asserted on appeal, the appellate court must make a determination of whether the workers' compensation judge's ruling was legally correct." *Ducote v. Louisiana Industries, Inc.*, 07-1536, p. 3 (La.App. 3 Cir. 4/2/08), 980 So.2d 843, 845 (quoting *Trahan v. City of Crowley*, 07-266, p. 3 (La.App. 3 Cir. 10/3/07), 967 So.2d 557, 560, *writs denied*, 07-2462, 07-2471 (La. 2/15/08), 976 So.2d 185, 187).

In light of a period of improperly calculated indemnity benefits, the workers' compensation judge's ruling awarded "penalties in the amount of $2,000.00 per violation for a failure to pay the correct indemnity benefits from May 21, 2009 [,] through November 5, 2009[,]" for a total of $8,000.00. *See* La.R.S. 23:1201(F). The workers' compensation judge also awarded $8,000.00 in "penalties for terminating workers' compensation benefits on April 15, 2010[.]" *See* La.R.S. 23:1201(I).

We turn to H & H's separate contentions as to the various elements of the penalties and attorney fees award.

15

Intoxication Defense

First, H & H contends that the workers' compensation judge erred in awarding penalties and attorney fees "in light of Mr. Russell's positive drug test results." In doing so, H & H relies on *Savoy v. Cecil Perry Imp. Co.*, 691 So.2d 702, and *Barker v. Allen Canning Co.*, 95-252 (La.App. 3 Cir. 10/4/95), 663 So.2d 320, *writ denied*, 95-2688 (La. 1/26/96), 666 So.2d 323, for the proposition that reliance on a positive drug screen precludes a finding that the employer did not reasonably controvert a workers' compensation claim, even where the claimant overcomes the presumption of intoxication.

As a preliminary matter, we note that this aspect of the penalties does not arise pursuant to La.R.S. 23:1201(F), which uses the "reasonably controverted" standard. Instead, H & H *discontinued* indemnity benefits due to its intoxication defense. Pursuant to La.R.S. 23:1201(I), penalties and attorney fees are appropriate for "discontinu[ation of] payment of claims . . . when such discontinuance is found to be arbitrary, capricious, or without probable cause[.]"

Notwithstanding this difference, we find *Savoy*, 691 So.2d 692, and *Barker*, 663 So.2d 320, unpersuasive as applied to the facts of this case. In both cases, a panel of this court concluded that the workers' compensation judge erroneously imposed a heightened burden of proof on the employer. Both the *Savoy* and the *Barker* courts concluded that, based on the facts of the case under consideration, the claimant had not met his burden with regard to rebuttal of the presumption of intoxication. Therefore, both the *Savoy* and the *Barker* courts found that the workers' compensation judge erred in finding that the employer did not reasonably controvert the claim and in awarding penalties and attorney fees.

16

Here, H & H submitted evidence that Russell tested positive for opiates and marijuana immediately after the accident. However, as discussed above, we find no error in the workers' compensation judge's determination that Russell's accident was not of the type that any alleged intoxication would contribute to the cause of the accident. Thus, unlike in *Savoy*, 691 So.2d 692, and *Barker*, 663 So.2d 320, the claimant in this case met his burden. Further, H & H paid Russell's medical benefits for almost a year before termination. Phil Moory, the insurance adjuster, testified that H & H did not terminate Russell's benefits until it received a certified copy of Russell's drug test results. Notably, Moory also testified that H & H terminated Russell's benefits before reviewing Dr. Gunderson's medical records.

Based on these facts, we find no error in the workers' compensation judge's conclusion that H & H arbitrarily and capriciously terminated Russell's benefits.

H & H's argument in this regard is without merit.

Amount of Penalties

Next, H & H contends that the workers' compensation judge erred in awarding a total of $16,000.00 in penalties. It points out that such an award would exceed the $8,000.00 limit set forth in La.R.S. 23:1201(F).

However, contrary to H & H's chief argument, the workers' compensation judge's ruling reflects an $8,000.00 penalty for miscalculation of benefits and a separate $8,000.00 penalty for termination of benefits.[5] H & H's argument that a $16,000.00 penalty was awarded under La.R.S. 23:1201(F) is erroneous. Clearly,

---

[5] A panel of this court has previously found that "Subsection F does not limit penalties under *all* subsections of La. R.S. 23:1201 to an aggregate of $8,000.00." *Rivers*, 32 So.3d at 1096-1097 (emphasis added) (citing *Broussard v. Lafayette Parish Sch. Bd.*, 939 So.2d 662 (La.App. 3 Cir. 9/27/06), *writ denied*, 06-2591 (La. 1/12/07), 948 So.2d 152).

17

Subsection F limits the total award to $8,000.00. However, penalties were awarded under Subsection F and Subsection I. We find this argument unpersuasive.

Accordingly, we consider H & H's alternative argument that the workers' compensation judge erred in awarding in excess of $2,000.00 for the period during which it incorrectly calculated Russell's indemnity benefits. H & H argues that the period of miscalculation should have been considered as a single, collective claim rather than four separate awards of $2,000.00 for each check reflecting a miscalculated indemnity benefit check.

We find merit in this latter argument. As applicable in this case, La.R.S. 23:1201(F) limits penalties to a "maximum of two thousand dollars in the aggregate *for any claim*." (Emphasis added). In *Ducote*, 980 So.2d 845, a panel of this court reviewed the jurisprudence with regard to whether each instance of miscalculation of indemnity benefits constituted a separate claim for the purposes of penalties and attorney fees. The court concluded that, in a situation where indemnity benefits were miscalculated and, upon receiving notice of the error, the employer or insurance company remedied the error and issued a lump sum payment, the miscalculation was one claim for the purposes of penalties and attorney fees. *See also Burnett v. Village of Estherwood*, 09-680 (La.App. 3 Cir. 12/9/09), 25 So.3d 997.

Here, the record indicates that H & H miscalculated the amount of indemnity benefits due to Russell because Russell worked a reduced number of hours in the four week period before the accident. This reduction in hours was caused by a stoppage in work due to bad weather. When the miscalculation was brought to H & H's attention, the problem was remedied.

Thus, we affirm the workers' compensation judge's ruling insofar as it awarded penalties "for failure to pay the correct indemnity benefits from May 21, 2009 through November 5, 2009." However, we amend the related award for a total penalty of $2,000.00 rather than $8,000.00.[6]

With regard to the remaining $8,000.00 award for termination of benefits, we have, above, found that the record supports this award pursuant to La.R.S. 23:1201(I). Accordingly, we affirm that aspect of the ruling awarding an $8,000.00 penalty for "terminating workers' compensation benefits on April 12, 2010."

Finally, we note that the workers' compensation judge awarded attorney fees in the amount of $18,750.00. In light of our affirmation of the separate penalties under La.R.S. 23:1201(F) and (I), the imposition of attorney fees was not in error. H & H does not contest the amount of attorney fees awarded.

*Attorney Fees On Appeal*

Russell has filed an answer and seeks additional attorney fees incurred as a result of this appeal. "An increase in attorney's fees is awarded on appeal when the defendant appeals, obtains no relief, and the appeal has necessitated more work on the part of the plaintiff's attorney, provided that the plaintiff requests such an increase." *McKelvey v. City of Dequincy*, 07-604, pp. 11-12 (La.App. 3 Cir. 11/14/07), 970 So.2d 682, 690. A review of the record indicates that the claimant's counsel requested such attorney fees, filed a brief in support of the workers' compensation ruling and participated in oral argument. Therefore, an award of $2,000.00 in attorney fees on appeal is warranted.

---

[6] In his answer to this appeal, Russell sought additional penalties for nonpayment of medical costs in the event of an amendment. Russell has failed to brief this issue and it is therefore deemed abandoned. Uniform Rules of Court—Courts of Appeal, Rule 2-12.4.

**DECREE**

For the foregoing reasons, that portion of the Office of Workers' Compensation's judgment awarding penalties for the failure to pay the correct indemnity benefits is amended and recast as follows:

> IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED that penalties in the amount of $2,000.00 per violation for failure to pay the correct indemnity benefits from May 21, 2009 through November 5, 2009 are awarded for a total penalty of $2,000.00.

That portion of the judgment is affirmed as amended. Otherwise, the judgment is affirmed. Attorney fees in the amount of $2,000.00 are awarded to the claimant, Dustin Russell, for work performed on appeal. All costs of this proceeding are assessed to the appellants, H & H Metal Contractors, Inc. and Bridgefield Casualty Company.

**AFFIRMED AS AMENDED. ADDITIONAL ATTORNEY FEES AWARDED FOR WORK PERFORMED ON APPEAL.**