STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-580


JOHN CARRIERE

VERSUS

PATIENT'S CARE MEDICAL SUPPLY


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4
PARISH OF ACADIA, NO. 12-00002
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Phyllis M. Keaty, Judges.


VACATED IN PART, AMENDED IN PART,
AFFIRMED AS AMENDED, AND REMANDED.


Michael B. Miller
Miller & Miller
Post Office Box 1630
Crowley, Louisiana 70527-1630
(337) 785-9500
Counsel for Plaintiff/Appellant:
    John Carriere

**Mark A. Ackal**
**Mark A. Ackal & Associate**
**Post Office Box 52045**
**Lafayette, Louisiana 70505**
**(337) 237-5500**
**Counsel for Defendant/Appellee:**
     **Patient's Care Medical Supply**

**KEATY, Judge.**

The plaintiff, John Carriere, appeals from a judgment rendered by the workers' compensation judge (WCJ) finding that although he suffered an injury-producing accident in the course and scope of his employment with Patient's Care Medical Supply (PCMS), he was not entitled to receive any indemnity benefits or medical treatment, including physical therapy, after September 16, 2011. For the following reasons, we affirm in part, vacate in part, and remand.

### FACTS AND PROCEDURAL HISTORY

Carriere began working for PCMS in March of 2011 as a driver and deliveryman of medical supplies and equipment. On Thursday, July 14, 2011, he and co-worker, Quy Kim, were replacing a customer's recliner/lift chair. Carriere testified that they had to move the old chair from the customer's living room to make space for the new chair. When they were about half way to the curb, they dropped the old chair because it was "very heavy" and he felt a "pull" in his lower back. They pushed the chair the rest of the way to the street with their feet. Carriere continued working that day, and he worked as usual the next day without mentioning the incident to his employer. However, after suffering increased pain over the weekend, Carriere notified PCMS of his injury on the following Monday, along with his intent to avoid returning to work until he could be examined by Dr. John Cobb, an orthopedic surgeon. PCMS opened a workers' compensation claim on Carriere's behalf at the time and began paying him weekly indemnity and medical benefits.

Dr. Cobb diagnosed Carriere with post-traumatic lumbar pain syndrome. He recommended that Carriere attend physical therapy and placed him on no-work

status for one month. Dr. Cobb released Carriere to light duty on August 24, 2011. After returning to work for three weeks at light duty, Carriere called Dr. Cobb's office to report that he was unable to complete his job duties due to increased pain. Dr. Cobb placed Carriere back on no-work status on September 16, 2011, and PCMS reinstated Carriere's indemnity benefits at that time. Carriere had not returned to any employment when this matter went to trial on September 16, 2012.

Carriere filed a 1008 Disputed Claim for Compensation (1008) against PCMS in December of 2011, seeking an increase in his workers' compensation rate, authorization for continued physical therapy, and penalties and attorney fees for PCMS's improper payment of benefits and denial of medical treatment.

Following a trial, the WCJ rendered judgment, finding that Carriere was injured in a workplace accident in the course and scope of his employment with PCMS on July 14, 2011. She found, however, that because Carriere failed to prove that he suffered a continuing disability that rendered him unable to work and earn 90% of his pre-injury wages after September 16, 2011, PCMS was entitled to a credit for all indemnity benefits paid to Carriere after that date. The WCJ further determined that Carriere was not entitled to future medical treatment and that additional physical therapy was no longer medically necessary. Finally, Carriere was awarded a $2,000.00 penalty and $2,000.00 in attorney fees for PCMS's miscalculation of his average weekly wage. Carriere now appeals.

## ASSIGNMENTS OF ERROR

Carriere asserts that the WCJ erred:

> 1) in failing to award any weekly indemnity benefits and in awarding PCMS a credit against all indemnity benefits paid after September 16, 2011;

2) in finding that additional physical therapy ordered by Dr. Cobb was not medically necessary and in denying a penalty under La.R.S. 23:1201(F) for PCMS's denial of physical therapy;

3) in finding that Carriere was not entitled to further medical treatment;

4) in excluding a copy of the check stubs Carriere received from commissions paid to him by PCMS;

5) in finding that the average weekly wage was $469.86 and the workers' compensation rate was $313.26;

6) in only awarding $2,000.00 in attorney fees and in limiting the attorney fees based on the penalties upon which Carriere prevailed at trial; and

7) in failing to award any expenses.

Carriere further submits that because the WCJ committed several legal errors, a de novo review is proper.

## DISCUSSION

### *Standard of Review*

Carriere asserts that the WCJ committed legal error: 1) in relying upon documents that had previously been excluded from evidence when rendering its decision in this matter; 2) in failing to exclude a letter written by him to his supervisor which was neither authenticated by him nor furnished to him prior to trial; and 3) in finding that the sedentary work offered to him by PCMS did not have to be approved by his treating physician. Based on those alleged errors, Carriere contends that this court should conduct a de novo review of the record rather than the manifest error/clearly wrong standard of review normally employed in appellate review of workers' compensation cases.

PCMS counters that while the WCJ did mention the excluded evidence in its ruling, such fleeting reference was nonconsequential given the overwhelming

evidence of Carriere's lack of credibility. It further claims that although admitted into evidence, the letter objected to by Carriere was not crucial to the WCJ's ruling and actually bolstered rather than hurt Carriere's claims. Finally, PCMS contends that the WCJ committed no error in ruling that PCMS did not have to present a formal offer of sedentary work to Carriere's physician based on the WCJ's firm belief that Carriere was not credible and that the physician would have approved that work given his prior approval of light-duty work. In sum, citing *Russell v. H & H Metal Contractors, Inc.*, 11-27, p. 8 (La.App. 3 Cir. 6/1/11), 65 So.3d 806, 814, PCMS submits that even if the WCJ committed any erroneous evidentiary rulings, a de novo review is not warranted in this case because such error was not "'serious' and 'consequential.'"

The documents that Carriere refers to in the first part of his argument were offers for sexual conduct that Carriere posted online on September 16, 2011, the same day Dr. Cobb returned him to no-work status. The WCJ found the documents inadmissible because they had not been provided to Carriere's attorney during discovery and because the potential prejudice outweighed the probative value. PCMS then proffered the documents and questioned Carriere about them out of the presence of the WCJ. In its oral ruling, the WCJ made the factual finding that despite his testimony to the contrary, Carriere did call Dr. Cobb's office on September 16, 2011 to request that he be taken off work. It then noted that "his actions of posting . . . his interests in sexual activities" on the same day "were inconsistent with someone who is having so much trouble working[] that they can't go anymore." Clearly, the WCJ erred in referring to evidence which it had previously ruled was inadmissible. Nevertheless, we are convinced that such error was not serious or consequential given the WCJ's finding that Carriere was

4

simply not credible, a finding that was expressed several times during the trial and in oral reasons for ruling. *See Russell*, 65 So.3d 806. De novo review is not warranted on this basis.

The letter that Carriere refers to in the second part of his argument was introduced into evidence while Cindy Artello, PCMS's operations manager, was being questioned in PCMS's case-in-chief. The handwritten letter is dated November 8, 2011; it is addressed to "Ashley"[1] and signed "John." According to the letter, Carriere was "still in pain off and on[,] sometimes worse days than others." The letter referred to a "no-work" status from an interim doctor that Carriere had seen the day before and explained that the doctor was going to give him spinal injections to try to alleviate his pain. In allowing the letter into evidence, the WCJ stated that it did not think that the letter was the "type of statement covered by" La.R.S. 13:3732.[2] In the absence of any case law interpreting that statute to the contrary, we conclude that the WCJ did not err in allowing the November 8, 2011 letter into evidence. Moreover, any error that the WCJ made in admitting the letter was harmless given the fact that the letter lends support to Carriere's claim that he was still experiencing pain when it was written.

Carriere next contends that de novo review is warranted because the WCJ ruled that his treating physician did not have to approve the sedentary job allegedly offered to him by PCMS. As Carriere acknowledges in his appellant brief, this court has held that "physician approval . . . is not required for the employer to meet its burden" that it offered a claimant a suitable job. *City of Jennings v. Doucet*, 03-

---

[1] Ms. Artello testified that Ashley was the office manager at PCMS.

[2] Louisiana Revised Statutes 13:3732 is entitled "Statements by injured person regarding accident or injury; copies furnished injured person or representative."

1099, p. 4 (La.App. 3 Cir. 2/4/04), 865 So.2d 1056, 1059-60. In the instant case, the WCJ found that PCMS offered Carriere a job "he was capable of doing[;] that was within his geographical area and within his physical restrictions." The WCJ stated that it "ha[d] no question that the doctor would have approved sedentary duty had it been presented to him," and that "any reluctance on the doctor's part to do that . . . would have been based solely on Mr. Carriere's complaints which . . . I don't find completely credible." Given the law and the particular facts in this matter, we cannot say that the WCJ erred in finding that PCMS did not have to get physician approval for the sedentary job it offered to Carriere.

Because we have found no merit to Carriere's arguments that de novo review is proper, we will apply the manifest error/clearly wrong standard of review in this matter. *See Foster v. Rabalais Masonry, Inc.*, 01-1394 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, *writ denied*, 02-1164 (La. 6/14/02), 818 So.2d 784. In light of that standard of review, "great deference is accorded to the [workers' compensation judge's] factual findings and reasonable evaluations of credibility." *Garner v. Sheats & Frazier*, 95-39, p. 7 (La.App. 3 Cir. 7/5/95), 663 So.2d 57, 61.

### *Indemnity Benefits*

Carriere contends that the WCJ erred in failing to award him any weekly indemnity benefits after September 16, 2011, and in finding that PCMS was entitled to a credit for all indemnity benefits that it made prior to that date. He argues that a WCJ can only look at the medical evidence when deciding whether to award a workers' compensation claimant benefits, and he takes fault with the

6

WCJ's reliance on its observations of him during trial in denying him the indemnity benefits that he sought.[3]

PCMS counters that a WCJ, as a fact finder, can rely on its observations of a witness's demeanor and its assessment of a witness's credibility when deciding whether to award benefits to a particular claimant. Accordingly, it submits that the evidence supports the decision of the WCJ regarding indemnity benefits owed to Carriere and that the decision should be affirmed.

In *Odom v. Kinder Nursing Home*, 06-1442, p. 5 (La.App. 3 Cir. 4/25/07), 956 So.2d 128, 132, this court noted:

> "The issue of disability within the framework of the workers' compensation law is a legal rather than a purely medical determination. *LeBlanc* [*v. Grand Isle Shipyard, Inc.*, 95-2452 (La.App. 1 Cir. 6/28/96)], 676 So.2d [1157,] 1161. The issue of disability is determined with reference to the totality of the evidence, including both lay and medical testimony. *LeBlanc*, 676 So.2d at 1161." *Walker v. High Tech Refractory Servs., Inc.*, 03-1621, p. 4 (La.App. 1 Cir. 6/25/04), 885 So.2d 1185, 1188.

In *Magee v. Abek, Inc.*, 04-2554, p. 5 (La.App. 1 Cir. 4/28/06), 934 So.2d 800, 807, *writ denied*, 06-1876 (La. 10/27/06), 939 So.2d 1287, the first circuit noted that "[a] claimant's lack of credibility on factual issues can serve to diminish the veracity of his complaints to a physician," and that "in many cases, the credibility of the history given by the claimant to his physicians becomes as important as the medical opinions based in part on that history."

At the trial of this matter, Ms. Artello, PCMS's operations manager, and Andrew Szaniszlo, a former co-owner of PCMS, testified that Carriere complained of lower back pain before the chair-lifting incident. Both testified that Carriere did

---

[3] In its oral reasons for judgment, the WCJ noted that Carriere had not indicated any problems while sitting in trial for approximately six hours with only a few breaks which the WCJ characterized as "inconsistent with his testimony that he can't sit for more than a limited time without extreme discomfort."

not appear to be injured during the three weeks that he returned to work after being released to light-duty work by Dr. Cobb on August 24, 2011. Finally, both recalled being surprised when Carriere told them that Dr. Cobb had returned him to no-work status on September 16, 2011.

It is clear from our review of the record that the WCJ carefully examined the medical evidence in this matter. Nevertheless, after observing Carriere's demeanor on the witness stand and hearing the testimonies of Carriere, Ms. Artello, and Mr. Szaniszlo, the WCJ questioned the veracity of the complaints that Carriere made to his doctors following his July 14, 2011 accident. Given the fact that a WCJ can look to both lay testimony and medical evidence when determining the extent and duration of an injured claimant's disability, we cannot say the WCJ erred in finding that Carriere was not entitled to indemnity benefits after September 16, 2011. *See Odom*, 956 So.2d 128. This assignment of error lacks merit.

## *Additional Physical Therapy*

Carriere next contends that the WCJ erred in finding that he was not entitled to the additional physical therapy ordered by Dr. Cobb and in failing to award him a penalty for PCMS's improper denial of the medically necessary physical therapy. PCMS counters that there was no error in the WCJ's ruling in this regard, given its determination that Carriere had returned to his pre-injury status by September 16, 2011.

We have already affirmed the WCJ's finding that Carriere was not entitled to receive any indemnity benefits after September 16, 2011. In that same vein, we cannot say that the WCJ erred in finding that Carriere failed to prove that requested

8

physical therapy was medically necessary after that date. This assignment of error lacks merit.

## Additional Medical Treatment

Carriere submits that there is no medical evidence in the record to support the WCJ's finding that he was not entitled to any further medical treatment. PCMS counters that the WCJ's decision in this record is correct given Carriere's questionable credibility, his long-standing complaints of back pain prior to the complained-of injury, and the conservative treatment offered to Carriere by his medical care providers.

As stated previously, a WCJ can take into account the claimant's credibility when evaluating the medical evidence in a workers' compensation matter. *See Magee*, 934 So.2d 800. In its oral ruling, the WCJ acknowledged that there was conflicting evidence regarding whether Carriere was entitled to further medical treatment. Ultimately, however, after specifically finding that Carriere had "exaggerated his complaints" to his physician, it found that he was "back to his baseline." Given the totality of the evidence and the appellate standard of review when reviewing a WCJ's finding of disability or lack thereof, we cannot say that the WCJ erred in determining that Carriere had returned to his pre-accident status and was not entitled to further medical treatment. There is no merit to this assignment of error.

## Exclusion of Check Stubs

At the start of trial, the WCJ refused to admit into evidence copies of the check stubs Carriere received from PCMS showing the commissions he received during the twenty-six-week period prior to his accident on the grounds of surprise, since they had not been produced by Carriere in response to PCMS's discovery

requests. The checks stubs were proffered as Plaintiff's Proffer 1. Carriere contends that it was error for the WCJ to conclude that PCMS's own check stubs could have been a surprise to it at trial. PCMS submits that the exclusion was immaterial because the commissions noted on those check stubs were included in the materials that Clint Dobson, the claims adjuster assigned to Carriere's claim, testified that he used to calculate the average weekly wage.

We have closely examined the record and the check stubs found in Carriere's proffer are included in the wage and commission records found in Defendant's Exhibits 7 and 10. At trial, Mr. Dobson testified that although he was not initially aware that Carriere worked on commissions, once he realized that fact, he contacted PCMS and they provided him with the information contained in Defendant Exhibit 10 which he used to recalculate Carriere's average weekly wage. Accordingly, we conclude that the exclusion of the check stubs was immaterial since the material included therein was, in fact, admitted into evidence during PCMS's case-in-chief.

### *Average Weekly Wage/Workers' Compensation Rate*

Carriere argues that the WCJ erred in finding that the average weekly wage was $469.86 and the workers' compensation rate was $313.26. He contends that La.R.S. 23:1021(12)(a)(i) dictates that PCMS should have calculated his average weekly wage by multiplying his hourly rate, be that regular or overtime, by the hours that he worked instead of using the actual earnings paid to him.[4] Finally, Carriere submits that he was underpaid wages for the week ending July 11, 2011,

---

[4] Louisiana Revised Statutes 23:1021(12)(a)(i) provides that: "If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater. . . ."

i.e., he was paid regular rather than overtime wages for seven and a half hours of overtime, and that such underpayment resulted in an erroneous average weekly wage calculation.

While PCMS does not dispute that it may have underpaid Carriere on his July 11, 2011 pay check, it argues that Carriere should not be able to raise this issue for the first time on appeal since there is no way to determine at this point what may have affected the amount of his July 11, 2011 pay check. PCMS submits that even using the calculations proposed in Carriere's appellate brief, he was only underpaid $8.13 on the pay check in question. It argues that if PCMS had failed to pay Carriere overtime wages on his July 11, 2011 paycheck, the underpayment would have been nearly $40.00.[5]

In its oral ruling, the WCJ stated that because it had not been provided with an alternative calculation of Carriere's average weekly wage, it would use the one set by Mr. Dobson in January of 2012, which resulted in a weekly indemnity rate of $313.26. Carriere has convinced this court that he was underpaid on his July 11, 2011 paycheck. Mr. Dobson calculated Carriere's average weekly wage from the wages that were actually paid to him. Given PCMS's underpayment of wages to Carriere, Mr. Dobson's calculation is necessarily incorrect. Because we are unable to determine the exact cause and amount of that underpayment, we vacate the judgment insofar as it sets out Carriere's average weekly wage and his weekly indemnity rate, and we remand this matter for a "proper and accurate determination" of Carriere's average weekly wage. *Cotton v. First Fleet*, 08-1363,

---

[5] Carriere's regular hourly rate was $10.50; his overtime hourly rate was $15.75. Thus, if he was not paid seven and one half hours of overtime, he would have been underpaid $39.38 ($15.75 minus $10.50 equals $5.25; $5.25 times 7.5 equals $39.375).

p. 8 (La.App. 3 Cir. 4/1/09), 7 So.3d 155, 160, *writ denied*, 09-978 (La. 6/19/09), 10 So.3d 741.

*Attorney Fees*

Citing *Magbee v. Federal Express*, 12-77 (La.App. 3 Cir. 12/12/12), 105 So.3d 1048, Carriere argues that the WCJ erred in limiting the attorney fees awarded to the penalty for which he prevailed at trial. He contends that the $8,225.00 (forty-seven hours times $175.00 contingent hourly rate) sought in attorney fees was reasonable based upon the time and work expended by his attorney in this matter. PCMS counters that the attorney fee award made in this case was proper given the outcome of this case and the fact that it was found to be owed a credit of more than $15,000.00 for its overpayment of indemnity benefits.

In *Magbee*, the claimant sought an award of $14,550.00 in attorney fees, but the WCJ awarded him $7,000.00. According to the oral reasons for judgment, the WCJ based the attorney fee award on the claimant having prevailed on three of the eight issues for which it had sought penalties. In amending the judgment to increase the attorney fee award, this court agreed with the claimant's premise that the "award should be based on the efforts of his attorneys relative to all issues, including those issues for which he did not receive a penalty." *Id.* at 1061. After applying the factors set forth in *McCarroll v. Airport Shuttle, Inc.*, 00-1123 (La. 11/28/00), 773 So.2d 694,[6] this court raised the attorney fee award from $7,000.00 to $12,000.00 rather than to the amount sought, finding that some of the time spent

---

[6] "Some of the factors taken into account by the judge in fixing the amount of the fee are the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the employee, and the amount of time the attorney devoted to the case." *McCarroll*, 773 So.2d at 700.

by the claimant's attorney "extended an otherwise simple issue and should not be counted toward the overall attorney fee."

"Awards of penalties and attorney's fees in workers' compensation are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Although the Workers' Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed." *Williams v. Rush Masonry, Inc.,* 98-2271, pp. 8-9 (La. 6/29/99), 737 So.2d 41, 46 (citation omitted). An appellate court reviews the WCJ's decision to award penalties and attorney fees using the manifest error/clearly wrong standard of review. *Ducote v. Louisiana Indus., Inc.,* 07-1536 (La.App. 3 Cir. 4/2/08), 980 So.2d 843. The amount of attorney fees awarded to a claimant by a WCJ will not be reversed unless we find an abuse of discretion. *Kinard v. New Iberia Wastewater Treatment Facility*, 12-1393 (La.App. 3 Cir. 4/3/13), 116 So.3d 5.

After applying the *McCarroll* factors to the matter before us and affording the WCJ the deference owed in determining the attorney fee award, we conclude that the WCJ abused its discretion in awarding Carriere $2,000.00 in attorney fees, and we increase the award to $4,000.00, an amount which we find is reasonable under the circumstances.

### *Expenses*

Finally, Carriere claims that the WCJ erred in failing to award him any of the $781.78 in litigation expenses that his attorney incurred in pursuing this matter. PCMS disagrees, citing *Kinard*, 116 So.3d at 11, for the proposition that the WCJ "has broad discretion in assessing court costs and can render judgment for costs against any party as it may consider equitable. La.Code Civ.P. art. 1920."

13

Here, even though Carriere was awarded penalties and attorney fees for PCMS's miscalculation of his compensation rate, he did not prevail on many of the issues presented at trial. Accordingly, we do not find that the WCJ abused its discretion in failing to award him the expenses he incurred in pursuing this matter.

## DECREE

The judgment of the WCJ is vacated insofar as it sets out Carriere's average weekly wage and his weekly indemnity benefits, and this matter is remanded for a redetermination of those amounts. In addition, the judgment is amended to increase the attorney fee award from $2,000.00 to $4,000.00. In all other respects, the judgment is affirmed.

**VACATED IN PART, AMENDED IN PART, AFFIRMED AS AMENDED, AND REMANDED.**

14